391 A.2d 1074

William PEGG, Appellant at Nos. 724, 743,

v.

GENERAL MOTORS CORPORATION and Samson
Buick Company

v.

Frank PARSONS and Olin Corp., Chemply, Inc., and
Jones Chemicals, Inc.

Appeal of Frank PARSONS at Nos. 823, 916, 824, 915.

William PEGG, Appellant at Nos. 725, 744,

v.

OLIN CHEMICALS HYPOCHLORITE PRODUCTS, a Division
or Subsidiary of Olin Corp., and Chemply, Inc.,

v.

Frank PARSONS, an Individual General Motors Corp., and
Samson Buick Company, a Corp., and the City
of Pittsburgh.

Frank PARSONS, Appellant,

v.

GENERAL MOTORS CORPORATION, Samson Buick
Company, Olin Corporation, Chemply, Inc., and
Jones Chemicals, Inc.

v.

CITY OF PITTSBURGH.

Superior Court of Pennsylvania.

Argued Nov. 10, 1976.

Decided July 12, 1978.

60

Jacobs, President Judge, and Price and Van der Voort, JJ., joined in parts 1, 2 and 3 as to appellant Pegg and in parts 5 and 6.

Edward J. Balzarini, Pittsburgh, for appellant, at Nos. 724, 725, 743, and 744.

Richard D. Klaber and James R. Miller, Pittsburgh, for appellant, at Nos. 823, 824, 915, and 916.

James R. Fitzgerald, Pittsburgh, for appellant, at No. 738.

John J. Repcheck, Pittsburgh, for appellee, at Nos. 724, 725, 823, and 916.

John R. McGinley, Jr., Pittsburgh, for appellee, at Nos. 743, 744, 824, and 738.

Bernice Hummert, Pittsburgh, for appellee, at No. 915.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT, and SPAETH, JJ.

PER CURIAM:

The judgment of the lower court as to appellant Pegg in his action against Olin is reversed, and a new trial ordered, as discussed in Judge SPAETH's opinion, with Judge HOFFMAN concurring in the result.

The judgment of the lower court as to appellant Parsons as plaintiff and as additional defendant is affirmed by a divided court: Judge PRICE's opinion is in support of affirmance; Judge SPAETH's opinion, in all matters relevant to appellant Parsons, is in support of reversal, with Judge HOFFMAN concurring in the result.

The judgments entered on the directed verdicts entered in favor of appellees General Motors and the City of Pittsburgh are affirmed, as discussed in Judge SPAETH's opinion, with Judge HOFFMAN concurring in the result.

The non-suits in favor of defendants Chemply, Inc., Samson Buick Company, and Jones Chemicals, Inc., which were not appealed, are not affected by this disposition.

PRICE, J., files an opinion in support of per curiam order in which JACOBS, President Judge, and VAN der VOORT, J., join.

SPAETH, J., files an opinion in support of per curiam order in which CERCONE, J., joins, in which JACOBS, President Judge, and PRICE and VAN der VOORT, JJ., join in parts 1, 2 and 3 as to appellant Pegg, and in parts 5 and 6, and in which HOFFMAN, J., concurs in the result.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

## IN SUPPORT OF PER CURIAM ORDER

PRICE, Judge:

We do not believe that appellant Parsons has a cause of action or standing to present a claim by reason of the circumstances under which he secured possession of the product. Therefore, in regard to appellant Parsons' suit against Olin and General Motors, we would affirm the verdict in favor of Olin and the directed verdict in favor of General Motors.

Furthermore, we find no error in the court below which would affect the verdict in favor of Pegg against Parsons. We would therefore affirm the judgment against Parsons in favor of Pegg.

JACOBS, President Judge, and VAN der VOORT, J., join in this opinion.

IN SUPPORT OF PER CURIAM ORDER

SPAETH, Judge:

These two appeals are from directed verdicts and jury verdicts in a tort and strict liability case. Given the rather complex division in the court, as noted in the foregoing *per curiam* order, a prefatory comment may be helpful.

Part 1 of this opinion concerns whether appellants Pegg and Parsons have a cause of action against Olin in strict liability and in negligence. Parts 2 and 3 concern whether liability on these causes of action was established at trial. Since the Court is evenly divided on whether appellant Parsons has a cause of action, it must be borne in mind that while the discussion in Parts 1, 2 and 3 represents the opinion of the majority of the court as to appellant Pegg, it speaks for only two members of the court as to appellant Parsons. To note at each appropriate point that various statements of the law as to Pegg represent as to Parsons the opinion of only two judges would be cumbersome and not illuminating; we therefore leave it to the reader to remember the distinction.

Part 4 of this opinion concerns whether the verdict in favor of Pegg and against Parsons as additional defendant should stand. Again, the court is equally divided, and this section of the opinion speaks for only two members of the court.

Parts 5 and 6 of this opinion represent the opinion of the majority of the court.

On July 7, 1971, Frank Parsons, an employee of the City of Pittsburgh, requested and received from another city employee, Joseph Balkovec, a small quantity of a chemical called HTH, to which Balkovec had access. HTH is a swimming pool sanitizer manufactured by Olin Chemical Hypochlorite Products, and was used by the city in its public pools; Parsons intended to give it to a friend for use in the friend's pool. Balkovec took the HTH from a drum with "DANGER" written on it; Parsons saw this but did not inquire about the danger. Balkovec placed the HTH in a

dirty paper bag, and Parsons put the bag on the floor of his General Motors car, behind the front seat. At the end of the workday, Parsons gave William Pegg a lift in his car, Pegg riding in the front passenger seat. They heard a hissing sound and suddenly were engulfed in flames. Pegg, trying to get out, reached for his door lock button, but slid onto the floor without opening the door. Parsons tried to open his door lock button but it would not open. Somehow, however, he got out of the car, and reached back in and pulled Pegg out of the driver's side. Both had suffered extensive burns.

Pegg sued Olin and General Motors, in separate suits. Each defendant joined the other and Parsons as additional defendants, and Olin also joined the City of Pittsburgh. Parsons sued Olin and General Motors.[1] The suits were consolidated for trial.

Testimony established that HTH is a granular substance the principal ingredient of which is calcium hypochlorite. HTH contains 1.2% water but is considered "dry." The granules can be decomposed by contact with various contaminants, including organic liquids (such as oil, gasoline or alcohol), grease, and cellulose (a material found in paper bags). Decomposition gives off oxygen, chlorine, and high heat, all of which together can easily result in further decomposition and ignite nearby combustibles, producing an intense chemical fire.

The trial judge granted General Motors and the City of Pittsburgh directed verdicts. The jury returned a verdict in favor of Olin but against Parsons as defendant in the amount of $250,000. Post-verdict motions were made and denied, and these appeals followed.

1. Whether Parsons and Pegg Have a Cause of Action

Since Parsons obtained city property for private use he might be characterized—and the lower court did characterize him—as a thief. The lower court's opinion states that because the HTH fell into the hands of a thief, Olin owed no

---

1. Other defendants were involved but are not relevant here.

duty, either to Parsons or to Pegg, whether the action sounds in strict liability or in negligence.[2]

### (a) Is there a cause of action in strict liability?

In *Salvador v. Atlantic Steel Boiler Co.*, 457 Pa. 24, 319 A.2d 903 (1974), the Supreme Court abolished the requirement of horizontal privity in actions for breach of warranty, and allowed an employee of a purchaser to recover for an injury caused by a defective product. The Court reasoned that the relief available in breach of warranty actions should be as broad as that available in actions under the Restatement (Second) of Torts, § 402A (1965), and noted, "Today . . . a manufacturer by virtue of section 402A is effectively the guarantor of his products' safety." 457 Pa. at 32, 319 A.2d at 907 (citing *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966), and *Kassab v. Central Soya*, 432 Pa. 217, 246 A.2d 848 (1968). Further, the Court said:

> We have decided that *no current societal interest is served by permitting the manufacturer to place a defective article in the stream of commerce and then to avoid responsibility for damages caused by the defect.* He may not preclude an injured plaintiff's recovery by forcing him to prove negligence in the manufacturing process. *Webb v. Zern,* [*supra,* which adopted § 402A].
>
> Neither may the manufacturer defeat the claim by arguing that the purchaser has no contractual relation to him. *Kassab v. Central Soya,* [*supra,* abolishing requirement of vertical privity in breach of warranty actions]. Why then

**2.** This conclusion did not lead the lower court to hold in the first instance that Parsons and Pegg had no cause of action. Instead, the court dealt with the problem only in the context of the trial judge's refusal to admit evidence of the warnings on the drum of HTH: Since Olin owed no duty to Parsons or Pegg, because Parsons was a thief, the warnings were irrelevant. Lower court's opinion at 15. Before us, Olin argues, more broadly, that the theft entitled it to a directed verdict, while Parsons argues that since some testimony indicated that he was permitted to take the HTH, whether he was a thief was a factual question that should have been left for the jury. In the view we take of the case, we need not consider Parsons's argument about his status.

should the mere fact that the injured party is not himself the purchaser deny recovery?

457 Pa. at 32, 319 A.2d at 907 (emphasis supplied).

Thus, it would seem that the concern of the Court is that manufactured products be free of defect as of the time of manufacture, regardless of whose hands they subsequently fall into.[3]

The question presented here is whether if the product falls into the hands of a *thief*, the manufacturer *does* "avoid responsibility for damages caused by the defect [in the product]."

■ So far as Pegg is concerned the question presents relatively little difficulty.[4] *He* was not a thief; he did not even know the HTH was in Parsons's car. To be sure, if Olin's responsibility depends upon, or is defined by the existence of, a contractual relationship between it and the person injured by the defective product—as used to be the law, *see Salvador v. Atlantic Steel Boiler Co., supra* —Pegg could not recover. When, however, Olin's responsibility is defined not in contractual terms but instead is made to depend upon whether Olin has "place[d] a defective article in the stream of commerce," *id.*, 457 Pa. at 32, 319 A.2d at 907, no reason appears to distinguish between Pegg, who did not buy the product, and someone who did buy the product. If, in other words, Olin "is effectively the guarantor of [its] products' safety," *id.*, the guaranty should extend to those

3. *See McCown v. International Harvester,* 463 Pa. 13, 342 A.2d 381 (1975) (plaintiff's contributory negligence will not bar recovery under § 402A).

4. *But see* the Restatement, which in its commentary notes:
Casual bystanders, and others who may come in contact with the product, . . . have been denied recovery. There may be no essential reason why such plaintiffs should not be brought within the scope of the protection afforded, other than that they do not have the same reasons for expecting such protection as the consumer who buys a marketed product . . . .. The Institute expresses neither approval nor disapproval of expansion of the rule to permit recovery by such persons.
Restatement, *supra*, § 402A, Comment *o*, p. 356.

persons who encounter the product after Olin as its manufacturer has released it.

So far as Parsons is concerned, the question is more difficult.[5] Reflection will show, however, that the fact that he was a thief (as for discussion we assume he was) is not by itself sufficient reason to deny him the right to recover. The problem may be thought of in purposive, or functional, terms. If Parsons was a thief, he may be punished as a thief. The purpose, or function, of the criminal law is to define who is a thief, and to prescribe the punishment, which must be proportional to the theft. *See Coker v. Georgia,* 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977) (death disproportional punishment for rape). The purpose of the civil law, specifically of § 402A, has nothing to do with defining a given crime, or with prescribing punishment proportional to that crime. Rather, as has just been discussed, it is to ensure that a manufacturer does not expose persons to defective products, the accomplishment of this purpose being sought by providing that if the manufacturer does expose persons to defective products, it will be liable to compensate them for their resulting injuries. To say that because Parsons was a thief he may not recover is to confuse the civil purpose of the law, which is to regulate the conduct of Olin as a manufacturer, with the criminal purpose of the law, which is to regulate the conduct of Parsons.[6] As concerns the responsibility of *Olin*—and that is all we are concerned with here—it is nothing to Olin whether Parsons was a thief or not, any more than it is whether Parsons did or did not have a contractual relationship with Olin. This may readily be seen by observing that to allow Parsons to recover, even though he was a thief, imposes no additional

**5.** *See* Prosser, Law of Torts, § 100, at 662 n. 1 (4th ed. 1971) (finding no decision on point but noting, without elaboration, that it "appears unlikely" that any liability in favor of a thief would be found under § 402A).

**6.** This confusion is manifested by the lower court's characterization of a verdict in favor of Parsons, who suffered first and second degree burns over 40 to 50 percent of his body, as "reward[ing] the thief." Lower court's opinion at 15. A verdict in a civil case is not a "reward" but compensation.

burden on Olin. In either case—Parsons a thief; Parsons not a thief—Olin's responsibility is the same: not to manufacture and place in the stream of commerce a defective product.

(b) Is there a cause of action in negligence?

Section 388 of the Restatement (Second) of Torts, *supra*, undertakes to define the liability in negligence of one who supplies another with something dangerous. In Comment *a* this is said:

> The words "those whom the supplier should expect to use the chattel" and the words "a person for whose use it is supplied" include not only the person to whom the chattel is turned over by the supplier, but also all those who are members of a class whom the supplier should expect to use it or occupy it or share in its use with the consent of such persons, irrespective of whether the supplier has any particular person in mind. Thus, one who lends an automobile to a friend and who fails to disclose a defect of which he himself knows and which he should recognize as making it unreasonably dangerous for use, is subject to liability not only to his friend, but also to anyone whom the friend permits to drive the car or chooses to receive in it as a passenger or friend, if it is understood between them that the car may be so used
>
> . . . .
>
> In the cases thus far described, the rule stated in this Section has been applied only in favor of those who are injured while the chattel is being used by the person to whom it is supplied, or with his consent. In all probability the rule stated would not apply in favor of a thief of the chattel, or one injured while the thief is using it . . . .

Here (we have assumed) Parsons was a thief of the HTH supplied by Olin. Pegg was injured while Parsons was using (transporting) the HTH. The question presented, therefore, is whether the Restatement's Comment should be applied to hold that neither Parsons nor Pegg has a cause of action

against Olin in negligence. As one considers how to answer this question it becomes apparent that the critical fact is that the HTH, although stolen, was stolen from the city, not from Olin.

Consider first the case cited in the Comment, of one who supplies a defective car to his friend. Suppose the defect is that the car's brakes don't work. Why should the owner be liable in negligence to his friend, when the friend steps on the brakes, the car doesn't stop but runs into a car ahead of it, and the friend is hurt? Stated generally the answer is, because the owner has failed to exercise the standard of care required of a reasonably prudent man. Restatement of Torts (Second), *supra*, § 283. Stated specifically, that is, in terms of Section 388, the answer is, because: the owner knew or had reason to know that it was dangerous for his friend to drive the car, § 388(a); he had no reason to believe that his friend would realize the danger, § 388(b); and he failed to exercise reasonable care to inform his friend of the danger, § 388(c).

Now consider the same owner and the same car, but suppose that the car is taken from its garage by a thief, who is hurt when the car doesn't stop. Should the owner be liable to the thief? Although the Comment to Section 388 reserves the answer to this question, it seems reasonably plain that the answer should be that the owner should not be liable. The reason is that *the fact of the theft precluded the owner from doing what a reasonably prudent man should have done.* Stated differently: The owner had the chance to warn his friend about the defective brakes, and as a reasonably prudent man, he should have taken the chance. However, he had no chance to inform the thief.[7] To hold the

7. An injured thief might argue that if a car theft is reasonably foreseeable, the car's owner has a duty to leave a note in his car to warn everyone, including possible thieves, that the brakes are defective. We see a distinction, however, between, on the one hand, requiring the owner of a chattel to take the same precautions for a thief as for an authorized user, and on the other, requiring him to take precautions for the special benefit of an unauthorized user only. This distinction is embodied in the law of liability of possessors of

owner liable to the thief would be to say: A reasonably prudent man must give warnings; you did not give warnings; never mind that you had no chance to.

It may now be seen why the critical fact here is that the HTH, although stolen, was stolen from the city, not from Olin. Olin supplied the HTH to the city. Since we are only discussing whether Parsons and Pegg could state a cause of action against Olin, we will hypothesize that a jury could find two facts: first, that Olin did not give proper warnings about the dangerous qualities of the HTH; second, that if proper warnings had been supplied with the HTH, Balkovec would not have given Parsons the HTH at all, or would have passed the warnings on to him, *see* section *2, infra.*[8] With these assumptions in mind, we see that since Olin supplied the HTH to the city, *that* was when it had a chance, which as a reasonably prudent manufacturer it was required to take, to give warnings about the HTH. If (when) it failed to take that chance, its negligence was complete. Therefore, the subsequent theft of the HTH by Parsons *was as to Olin irrelevant*; unlike the theft in the car case, the theft by Parsons in no way precluded, or affected at all, Olin's ability to act in a reasonably prudent way. Accordingly, the fact of the theft did not preclude Parsons and Pegg from stating a cause of action in negligence against Olin.

Although, judging from the Comment to Section 388, this conclusion is apparently of first impression, it entails no novel principle of law. To the contrary, it reflects long-settled concepts of legal relevancy.

■ As an initial proposition one might quarrel with the conclusion that as to Olin the theft by Parsons was irrelevant. One might say, *but for* the theft by Parsons, Parsons

land to persons on the land. *See generally*, Restatement of Torts (Second), *supra*, §§ 328E–350.

8. If Balkovec would not have acted differently, Olin's negligence would not have been the factual cause of the harm. We discuss Olin's duty to supply warnings as an example of a possible basis for liability in negligence; we do not mean to foreclose arguments that Olin failed in some other way to exercise reasonable care.

and Pegg would not have been near the HTH and so would not have been burned. In one sense, this logic is impeccable; it is not, however, the logic of the law. *Commonwealth v. Williams*, 133 Pa.Super. 104, 1 A.2d 812 (1938), was an involuntary manslaughter case. The defendant hit a telephone pole and killed one James Vincent. Although the defendant was not driving negligently or recklessly, he was driving despite the fact that he had no operator's license. In holding that the defendant should be discharged, this court said:

> [I]t is true that the death would not have occurred if [the defendant's] automobile had not been on the highway. Its presence was unquestionably a condition without which Vincent's death could not have taken place. But [the defendant's] violation of the Vehicle Code had no direct relationship to the death.

*Id.*, 133 Pa.Super. at 111, 1 A.2d at 815.

*Williams v. D'Amico*, 78 Pa.Super. 575 (1922), illustrates the same principle in the context of a civil case. There the defendant negligently drove his car into a car driven by the plaintiff, but contended that he should not be held responsible because the car the plaintiff was driving was registered in another's name. In rejecting this contention this court expressly approved the lower court's opinion. The lower court granted the point that the accident would not have occurred but for the plaintiff's violation of the statute that "no motor vehicle shall be . . . driven upon any public street . . . until . . . registered." Nevertheless, the court held, the defendant "could not escape the consequences of [his] negligen[ce]", since "[t]he injury here inflicted had no relation" to the plaintiff's violation of the statute. To the same effect as these cases, *see Roadman v. Bellone*, 379 Pa. 483, 108 A.2d 754 (1954); *Salvitti v. Throppe*, 343 Pa. 642, 23 A.2d 445 (1942); *Metz v. Pittsburgh Rwys. Co.*, 135 Pa.Super. 534, 7 A.2d 505 (1939). *See also* Restatement, § 469:

> The plaintiff's unexcused violation of a legislative enactment . . . which defines a standard of conduct for

his own protection is contributory negligence in itself if it is a legally contributing cause of his harm.

So here: *But for* the theft by Parsons, he and Pegg would not have been burned. The theft, however, cannot enable Olin to escape the consequences of its negligence in failing to warn against the dangerous qualities of its product, for there is no relationship, in the sense in which the cases define "relationship," between the theft and the failure to warn.

Finally, the correctness of this conclusion may be tested by considering the alternative. Suppose the theft were held to excuse Olin. The result would be to convert Parsons and Pegg into outlaws, without protection of the law. This possibility was expressly considered in *Williams v. D'Amico, supra,* where the defendant argued that because the plaintiff had not registered the car, "it was an 'outlaw' on the highway and entitled to no protection, except as against gross and wilful negligence . . . ." *Id.* at 576. This argument was properly rejected. It reflects the same confusion of thought discussed above in considering Olin's strict liability. For failing to register the car the plaintiff in *Williams* was punishable, just as Parsons is punishable for the theft of the HTH. However, punishment is the function of the criminal law, not the civil; and the criminal law does not prescribe that punishment for crime shall include the loss of all rights under the civil law—nor indeed could the criminal law prescribe such punishment and still conform with the requirement that punishment must be proportional to the crime.

2. Olin's Liability to Parsons and Pegg in Strict Liability

Section 402A of the Restatement provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although (a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Thus, proof of strict liability requires proof that the product was "in a defective condition." *Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893 (1975) (plurality opinion). There are two senses in which the HTH might have been found to have been defective.

First—and this was the main argument advanced by Parsons and Pegg at trial—the HTH might have been found defective because of an unreasonably dangerous design. *McCown v. International Harvester, supra; Hargrove v. Frommeyer & Co.*, 229 Pa.Super. 298, 323 A.2d 300 (1974). It is important to distinguish a product that is defective because of its unreasonably dangerous design from a product that is "inherently dangerous." A manufacturer will not be held strictly liable simply because a product is inherently dangerous:

The seller of a product is not responsible for harm caused by such inherently dangerous products as whiskey or knives that despite perfection in manufacture, design or distribution, can cause injury.

*Berkebile v. Brantly Helicopter Corp., supra,* 462 Pa. at 95, 337 A.2d at 899 (plurality opinion).

*And see Incollingo v. Ewing,* 444 Pa. 263, 287, 282 A.2d 206, 219 (1971) (potentially dangerous drug). Whether a product is inherently dangerous is a function of the extent to which the dangers are technologically unavoidable and the public need for the product great. *See Incollingo v. Ewing supra,* 444 Pa. at 287–88, 282 A.2d at 219; Prosser, *supra,* § 99 at 660–61. As for HTH, there was expert testimony that a competing product, Sentry, was manufactured with a higher

water content than HTH and could not be decomposed as easily, and that the Sentry formula was available for Olin to use. This was enough evidence to support a finding that HTH was not inherently dangerous—because its dangers were not technologically unavoidable and the public need for it was not great—but that it was defective because its susceptibility to contamination and decomposition constituted an unreasonably dangerous design. Whether this was so was a question that should have been submitted to the jury.[9]

Second, the HTH might have been found defective because it was sold without adequate warnings. A seller must give such warnings and instructions as are required to inform the user of the possible risks and inherent limitations of his product. *Berkebile v. Brantly Helicopter Corp., supra* (plurality opinion and Mr. Justice POMEROY, concurring); Restatement § 402A, comments *h* and *j*.[10] "[A] product, as to which adequate warning of danger involved in its use is required, sold without such warning is in a 'defective condition.'" *Incollingo v. Ewing, supra* 444 Pa. at 287, 282 A.2d at 219. On the other hand, where an adequate warning is given, the seller may reasonably assume that it will be read and heeded, and the product will not be found defective. *Incollingo v. Ewing, supra*; Restatement § 402A, comments *h* and *j*.

Here the trial judge did not allow Parsons and Pegg to pursue this second theory of recovery because he refused to admit into evidence whatever warnings were on the drum of HTH. Olin argues that Parsons would not have acted differently whatever were the warnings on the drum. The basis of this argument is that Parsons could only see the word "DANGER" on the drum because, on Balkovec's instructions, Parsons stayed outside the shed where the HTH was stored while Balkovec put the HTH in the paper bag.

9. Instead the judge told the jury that if it found that HTH was stable and would not decompose as packaged, it should find Olin not liable. Record at 1242a.

10. This is so regardless of whether the seller knew or had reason to know of the risks and limitations. *Robbins v. Farmers Union Grain Terminal Ass'n*, 552 F.2d 788, 794 n. 15 (8th Cir. 1977).

This argument, however, fails to note that *Balkovec* might well have acted differently, depending on the adequacy of the warnings; he might have refused to give Parsons so dangerous a chemical, or he might have passed the warning on to Parsons. In this respect we agree with the court in *Spruill v. Boyle-Midway, Inc.*, 308 F.2d 79 (4th Cir. 1962), which involved a child's death from drinking furniture polish left within its reach by its mother. The defendant manufacturer argued that any deficiencies in the warnings on the label were irrelevant because the mother admitted she had never read the label. The court said, however:

> In this case had the warning been in the form *calculated to attract the user's attention,* due to its position, size, and the coloring of its letters, and had the words used therein *been reasonably calculated to convey a conception of the true nature of the danger,* this mother might not have left the product in the presence of her child.

308 F.2d at 87 (emphasis supplied).

See also *Maize v. Atlantic Refining Co.*, 352 Pa. 51, 41 A.2d 850 (1945) (action in negligence).

 On remand, if the HTH is found defective [11]—either because of unreasonably dangerous design or inadequate warnings—it will remain to be decided whether the conduct of Balkovec or Parsons constituted a superseding cause such that Olin will be released from liability. Another way of putting this, in strict liability, is to ask whether the product was put to an abnormal use. The tests for determining superseding cause and abnormal use are similar in that both involve the question whether the actions, negligent or not, of a third person were reasonably foreseeable. *See Kuisis v. Bald-Lima-Hamilton Corp.*, 457 Pa. 321, 331 n. 13, 319 A.2d 914, 920 n. 13 (1974); *Robbins v. Farmers Union Grain*

11. We acknowledge the uncertain effect of *Berkebile v. Brantly Helicopter Corp., supra,* in which two justices agreed that the requirement that the defect be "unreasonably dangerous" was not a separate element to be proved. The precedential effect of this holding is dubious. *See Commonwealth v. Little,* 432 Pa. 256, 248 A.2d 32 (1968); *Bair v. American Motors Corp.,* 535 F.2d 249 (3d Cir. 1976). In any case, there is little question here but that the risk of fire represented an unreasonable danger.

*Terminal Ass'n, supra* at 794 n. 15. *Compare* Prosser, *supra,* § 102 at 669 nn. 71–74 (manufacturer must guard against foreseeable misuses; collecting cases) *with* Restatement § 447 (in negligence, if third person's actions are foreseeable, defendant is not excused).[12]

### 3. Olin's Liability to Parsons and Pegg in Negligence

▬ The trial judge refused to charge the jury on Olin's liability in negligence, stating that there had been no evidence as to negligence, but only as to strict liability. Lower court's opinion at 10.

We cannot agree with this statement. The jury heard extensive expert evidence on the chemical properties of HTH, and heard one expert testify that the product could have been manufactured by an alternate, safer process. Record at 634a. These are facts from which negligence could have been found. *Muller v. Kirschbaum,* 298 Pa. 560, 564, 148 A.2d 851, 853 (1930). Furthermore, if the jury had had evidence of what warnings were on the drum of HTH, it might, without more, have been able to judge the adequacy of those warnings against a standard of reasonable care. *Maize v. Atlantic Refining Co., supra.*[13] When facts from which a causal connection may be found have been testified to with sufficient clearness and definiteness that a layman in the ordinary affairs of life could infer the cause from the effect, expert evidence is not necessary. *Delair v. McAdoo,* 324 Pa. 392, 188 A.2d 181 (1936).[14]

12. For a discussion on whether this is a jury question, *see Greiner v. Volkswagenwerk Aktiengeselleschaft,* 540 F.2d 85 (3d Cir. 1976) (concluding that it is).

13. On the subject of inadequate warnings, for a discussion of the elements of proof of negligence as compared with strict liability, *see Robbins v. Farmers Union Grain Terminal Ass'n, supra* at 794 n. 15.

14. His claim in negligence, unlike his claim in strict liability, would expose Parsons to the defense of contributory negligence. *See McCown v. International Harvester Co., supra.* Also, given Olin's negligence, it would remain to be decided whether the negligence was a substantial cause of the injuries to Parsons and Pegg. *Pushnik v. Winky's Drive In Restaurants,* 242 Pa.Super. 323, 363 A.2d 1291 (1976), and whether the actions of Parsons or Balkovec were a

### 4. Parson's Liability to Pegg as Additional Defendant

Parsons argues that his motion for judgment n.o.v. should have been granted because he cannot be held to have known about all the dangers inherent in HTH; more specifically, he argues that when he saw the word "DANGER" on the drum of HTH, he was not effectively alerted to the danger of a flash fire. This may be true; however, the jury could gave found that once he saw the word "DANGER", he was on notice that he had to inquire further, and that his failure to do so constituted negligence.

This, however, raises a question of causation: Had Parsons inquired further, would he have learned that the danger was of a flash fire? This question cannot be answered because, again, the trial judge precluded any evidence as to what warnings were on the drum of HTH. Perhaps the warnings were such that a jury could reasonably find that Parsons was negligent in not inquiring further.

Suppose, however, that the drum had a warning label that specified certain dangers but not the particular danger that *did* occur, or a label that gave the wrong precautionary steps. A jury could find that a reasonable person, believing he knew about the dangers and had taken proper precautions, would have proceeded to use the HTH, with the same injurious result.

The responsibility for proving causation, an element of the case against Parsons as additional defendant, was Olin's because Olin, not Pegg, brought Parsons into the case, alleging that he was solely liable, or liable over, or jointly liable. *See West v. Atlantic Refining Co.*, 62 D. & C. 598 (1948); 8 Goodrich-Amram 2nd § 2255(d):6 (1977). The burden of proof in any cause rests upon the party who, as determined by the pleadings or the nature of the case, asserts the affirmative of an issue. *O'Neill v. Metropolitan Life Insurance Co.*, 345 Pa. 232, 26 A.2d 898 (1942).

superseding cause, *Pushnik v. Winky's Drive In Restaurants, supra; Flickenger's Estate v. Ritsky*, 452 Pa. 69, 305 A.2d 40 (1973); Restatement, §§ 447, 449.

Here, Olin, in its desire to keep the evidence of warnings on the drum out of the suit against it, risked failing to prove, in its third-party complaint against Parsons, that negligence by Parsons was the cause in fact of Pegg's injuries. However, Olin at one point did try to introduce its own evidence of what "directions for use" were on the drum. Pegg (with Parsons joining) objected, and the evidence was refused. The distinction that Olin's counsel seems to have had in mind between "warnings," which Olin wanted barred, and "directions for use", which it wanted admitted, is not clear; and in erroneously rejecting the evidence of "directions" the lower court—predictably perhaps—relied in part on the arguments that Olin had made against the evidence of the "warnings." Nonetheless, the fact remains that had Olin been allowed to introduce evidence of "directions" the jury might have had a basis for finding that Parson's negligence in not inquiring into what the DANGER sign meant caused Pegg's injuries. Thus the case against Parsons should be remanded and a new trial with evidence of the "directions" admitted.

### 5. General Motors' Liability to Parsons and Pegg

The first asserted basis of General Motors' liability is the fact that the front seat of Parsons's car was not fire-resistant, and therefore to some extent fueled the fire.

Testimony showed that the top covering of the seat was resistant to burning cigarettes and dropped matches, but that the components of the seat underneath would burn. We nevertheless hold that the lower court's grant of a directed verdict was correct, because there was no evidence as to the burn rate of the seat as such, but only as to the burn rate of the individual components separately, under circumstances that would allow them to burn faster. Furthermore, we agree with General Motors that the failure to make a seat resistant to the heat generated by the decomposition heat of HTH, 900 degrees Fahrenheit (Record at 1109a), and the subsequent fire, 2000 degrees Fahrenheit (Record at 782–83a), was not negligent because it was not

reasonably foreseeable that the seat would be exposed to such heat—as distinguished from the heat of cigarette and match fires. Under § 402A, such a fire constituted an "abnormal use" of the product:

> Whether under Section 402A a particular use of a product is abnormal depends on whether the use was reasonably foreseeable by the seller.
>
> *Kuisis v. Baldwin-Lima-Hamilton Corp.*, 457 Pa. 321, 331, 319 A.2d 914, 921 n. 13 (1974).

Similarly, the foreseeability of the harm is an element of negligence. *Noon v. Knavel*, 234 Pa.Super. 198, 209, 339 A.2d 545, 550 (1975). Foreseeability is a judgment the lower court could properly make in the first instance, where there was not room for dispute. *Flickenger's Estate v. Ritsky, supra.*

The second asserted basis of General Motors' liability is the fact that the door lock buttons on the car allegedly malfunctioned. We must deny this claim.

Parsons and Pegg argue in their briefs that the door lock buttons melted. It must be noted that there is no evidence that the buttons had melted at the time appellants tried to use them; neither appellant indicated that the lock buttons felt at all unusual to the touch. However, in any event the argument could not succeed, for if the buttons melted, they did because of the unforeseeably hot fire.

If the assertion is, not that the buttons melted but that the locks simply malfunctioned, still the argument cannot succeed. In strict liability, there was no proof of a "defect." In negligence, there was no proof that the locks malfunctioned because of General Motors' negligence. Appellants failed to eliminate other responsible causes—specifically, the fire—for the malfunction, as the law requires. *See Gilbert v. Korvette's, Inc.*, 457 Pa. 602, 327 A.2d 94 (1974) (adopting § 328D of the Restatement, entitled Res Ipsa Loquitur).

## 6. The Liability of the City of Pittsburgh

 Parsons as an additional defendant has appealed the directed verdict in favor of the City of Pittsburgh. In his brief he concedes that the city cannot be held liable under a theory of *respondeat superior* because the acts committed by its employee were unauthorized, tortious, and outside the scope of employment. Instead, he argues, the city is liable because it did not adequately safeguard its dangerous property, the HTH. Looking to the record, we find that this is the first time that this theory of recovery has been suggested. We therefore cannot consider it now. *Commonwealth v. Mitchell*, 464 Pa. 117, 346 A.2d 48 (1975).

CERCONE, J., joins in this opinion.

JACOBS, President Judge, and PRICE and VAN der VOORT, JJ., join in parts 1, 2 and 3 of this opinion as to appellant Pegg, and in parts 5 and 6.

HOFFMAN, J., concurs in the result.