Robert Allen **BROWN** and Lola V. Brown, wife, Appellants,

v.

**CATERPILLAR TRACTOR COMPANY,** a corporation.

**No. 83–5707.**

United States Court of Appeals, Third Circuit.

Argued May 24, 1984.

Decided Aug. 13, 1984.

Rehearing and Rehearing In Banc Denied Sept. 10, 1984.

---

John M. Tighe (argued), Tarasi & Tighe, Pittsburgh, Pa., for appellants.

Robert S. Grigsby, Carl E. Harvison, Michael D. Heintzman (argued), Grigsby, Gaca & Davies, P.C., Pittsburgh, Pa., for appellee.

Before GARTH and SLOVITER, Circuit Judges, and FISHER, District Judge [*].

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

### I.

### INTRODUCTION

In August 1978, Robert Brown became a member of the United States Army Reserve and, as part of his training, began learning how to operate a tractor-bulldozer. Initially, the training involved observation from the "buddy" seat to the right and forward of the operator's seat, which was not equipped with a protective canopy. While the tractor-bulldozer was being used to clear land—specifically, to push a pile of materials that included two trees—one of the trees came over the blade and over the top of the vehicle and struck him. Brown sustained severe crush injuries from the blow, which was of such force that it broke the seat as well.

[*] Hon. Clarkson S. Fisher, Chief Judge for the United States District Court for the District of New Jersey, sitting by designation.

658

Brown alleges that his injuries were caused by the defective design and inadequate warnings of the tractor-bulldozer, which was manufactured by Caterpillar Tractor Company for the Department of the Army. Using diversity of citizenship as the basis for federal jurisdiction, he sued Caterpillar under Pennsylvania law on theories of negligence, breach of express and implied warranties, and strict liability. The district court entered summary judgment for Caterpillar on the grounds that the bulldozer was not defective as a matter of law and that the company was insulated from liability by the "government contractor defense" because it had built the bulldozer to government specifications. 554 F.Supp. 1269.

On appeal from summary judgment, however, this court concluded that there were genuine issues of material fact bearing on both issues and, accordingly, held that summary judgment was inappropriate. 696 F.2d 246 (3rd Cir.1982) (*Brown I*). In our opinion in *Brown I*, we also addressed, *inter alia,* the threshold question of the scope of the government contractor defense. We concluded that the defense exists in Pennsylvania and is available against all of Brown's claims. 696 F.2d at 251–53.

On remand, Brown limited his theory of liability to strict liability under section 402A of the Restatement (Second) of Torts, and the case was bifurcated and tried as to liability. The trial court asked the jury to answer six special verdict questions, including whether the bulldozer was (1) defectively designed because it was sold without a protective device over the passenger seat and (2) defective when sold because Caterpillar failed to provide adequate warnings of the danger to occupants in land-clearing and tree removal operations. In its instructions to the jury, the trial court said, among other things, that there could be no liability for failure to warn if the Army was aware of the dangers involved in clearing land without a canopy and that there could be no liability for defective design if Caterpillar had offered to "retrofit" the bulldozer with a protective device. The

trial court also refused Brown's request to instruct the jury that Caterpillar must prove that it had "carefully" executed the government contract and specifications in order successfully to invoke the government contractor defense. The jury found that the bulldozer had not been proved defective, as to either design or adequacy of warnings, and consequently did not reach the remaining four questions, which concerned proximate cause, strict compliance with the government contract, the Army's awareness of the danger, and whether Caterpillar had warned the Army about the danger.

On appeal, Brown contends that the trial court's instructions to the jury were erroneous and prejudicial. Brown also maintains that the trial judge erred in repeatedly refusing to allow him to state his objections during cross-examination, and that certain remarks made by the trial judge in the presence of the jury gave the impression that the court favored the defendant and are grounds for a mistrial.

II.

*BACKGROUND*

The tractor-bulldozer was manufactured and sold to the government by Caterpillar pursuant to a military contract and accompanying military specifications. It is not disputed that the specifications did not include a canopy or other protective device. However, the specifications did require the tractor to be "equipped with instruction plates or diagrams, including warnings and cautions, describing any special or important procedures to be followed in assembling, operating, or servicing the tractor...." App. at 571a.

On appeal, Brown does not argue that the lack of a canopy was a violation of the contract or specifications but argues that failure to affix warnings to the vehicle was such a violation. Brown, who had had no previous experience operating a bulldozer, testified at trial that he was not aware that it was dangerous to ride in the unguarded

passenger's seat while the bulldozer was being used to push felled trees during a land-clearing operation and that he was not warned by his superiors or co-workers. He also testified that there were no warnings or instructions about this danger on the machine or in an operator manual produced by the Army on the use of the bulldozer in land-clearing operations.

An expert witness for Brown, Dr. James Romualdi, testified as to his conclusion that the bulldozer was defective for the reasons that it did not have a canopy to protect occupants from rollovers—a Rollover Protective Shield (ROPS)—or from falling objects—a Falling Object Protective Shield (FOPS); it did not have a protective device to deflect objects; and it was not equipped with a warning that the machine should not be used in certain circumstances without such protective devices. Charles Jefferson, an engineer employed by Caterpillar, testified that the tractor-bulldozer was not defective, and that neither a ROPS nor a FOPS would have prevented the type of injury sustained by Brown.

Paul Hopler, a civilian engineer and procurement officer for the United States Army, was a defense witness and testified that the Army was aware of the availability of protective structures and rejected them because of transportation, visibility and maintenance problems. Hopler said that the specification accompanying the contract did not call for any kind of protective structure. There was conflicting testimony as to whether the bulldozer had had a protective structure that the Army removed before the incident at issue. There was also testimony for Caterpillar that in 1977, before the accident, it had in fact offered to "retrofit" the bulldozer with a protective device, in particular, a ROPS.

## III.

### FAILURE TO WARN

The court instructed the jury that if it found the Army knew of the danger involved in operating the bulldozer without an appropriate protective device, then Caterpillar could not be held liable for Brown's injuries on a theory of failure to warn.[1] Brown argues on appeal that it is irrelevant whether the Army, as Brown's employer, knew of the danger because Brown, the ultimate user of the product, did not know and was not warned. Thus we are presented squarely with the question whether under Pennsylvania law a warning must be directed to the ultimate user.

As this court has previously observed, the Pennsylvania Supreme Court has not definitively held that a supplier is required as a matter of law to provide specific warnings to all users into whose hands a product may fall. *See Price v. Inland Oil Co.,* 646 F.2d 90, 97 (3d Cir.1981). Nevertheless, we find some telling indications that it would hold that the sufficiency of warnings in a product liability case must be evaluated with regard to the ultimate user. *In Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 337 A.2d 893 (1975), a plurality of the Pennsylvania Supreme Court said:

> Where warnings or instructions are required to make a product non-defective, it is the duty of the manufacturer to provide warnings in a form that will reach the *ultimate consumer* and inform of the risks and inherent limits of the product. The duty to provide a non-defective product is *non-delegable.*

*Id.* at 103, 337 A.2d at 903 (emphasis added); *see also Neal v. Carey Canadian Mines,* 548 F.Supp. 357, 368 (E.D.Pa.1982) (citing *Berkebile* for proposition that in Pennsylvania under § 402A knowledge of employer does not relieve manufacturer of duty to provide warnings to employee as ultimate consumer).

Even if *Berkebile* is not binding upon us because it was not signed by a majority of the justices, the same view has since been adopted by the Pennsylvania Superior Court. In *Pegg v. General Motors Corp.,*

1. Specifically, the court said: "If you find from the evidence that the Army knew of the danger, then you would be justified in finding that the tractor bulldozer was not defective because of failure to provide a warning." App. at 545a–46a.

258 Pa.Super. 59, 391 A.2d 1074 (1978), the court stated: "[I]t would seem that the concern of the [Pennsylvania Supreme] Court is that manufactured products be free of defect as of the time of manufacture, regardless of whose hands they subsequently fall into." *Id.* at 69, 391 A.2d at 1078 (holding that even a thief has a cause of action in strict liability for defective design or failure to warn against manufacturer who places a defective article in stream of commerce). *See also id.* at 76–78, 391 A.2d at 1082–83.

A holding that the manufacturer's responsibility runs to the ultimate consumer is in accordance with Pennsylvania's justification for the imposition of strict liability, namely, risk-spreading, *see, e.g., Azzarello v. Black Brothers Co.*, 480 Pa. 547, 553, 391 A.2d 1020, 1025 (1978). The risk remains with the manufacturer, unless actually assumed by the user.

The issue whether knowledge of the Army, or knowledge of Brown's supervisors, could be imputed to Brown is similar to that which we considered recently in *Hammond v. International Harvester*, 691 F.2d 646 (3d Cir.1982). In that case the employer had requested a tractor without a ROPS so that it would fit in the barn. In affirming the verdict for the widow of an employee whose death would have been prevented by a ROPS, we pointed out that under Pennsylvania law, "[d]efectiveness is solely a function of the condition in which the product is delivered to the consumer." *Id.* at 652. We concluded there that "[a]ny risk which [the former owner or manager] may have assumed by ordering a tractor without a ROPS cannot be imputed to their innocent employee." *Id.*

Our conclusion in *Hammond* that the focus must be on the defect of the product vis-a-vis the user is no less applicable in this case because the defect results from failure to provide adequate warnings. In *Dougherty v. Hooker Chemical Corp.*, 540 F.2d 174 (3d Cir.1976), Judge Garth, writing for the court, applied Pennsylvania law holding that a product which contains inherent dangers is defective when sold if not accompanied by sufficient warnings, and stated, "Under such circumstances, the seller is held to strict liability if such a defective product *reaches the ultimate consumer* . . . ." *Id.* at 177 (emphasis added).

Our conclusion that Pennsylvania would hold that the duty to warn must be gauged in light of the employee's knowledge and not that of his or her employer is buttressed by a similar decision of the Ninth Circuit construing § 402A. In *Jackson v. Coast Paint and Lacquer Co.*, 499 F.2d 809 (9th Cir.1974), that court observed, "The most serious error in the challenged instruction is the statement that knowledge of the hazard on the part of plaintiff's *employer* would obviate any duty to warn plaintiff. . . . The seller's duty under § 402A is to 'the ultimate user or consumer.' " *Id.* at 812. The defect alleged in *Jackson* was the sale of paint in containers without a specific warning that fumes or vapors in an inadequately ventilated area could ignite and cause a fire or explosion. The *Jackson* court held that the adequacy of warnings must be measured according to the knowledge and understanding common to painters who will actually open the containers and use the paints; the possibly superior knowledge and understanding of painting contractors is irrelevant. 499 F.2d at 812–13. On the other hand, the court stated that where a supplier furnishes materials which are to be used under the direction of technicians or engineers, "if the warnings given are sufficient to apprise the engineers or technicians of the dangers involved, or if the technicians have knowledge of the dangers involved," then there is no duty to warn "those who simply follow the directions of the engineers or technicians." *Id.* at 813. *See Hopkins v. E.I. Du Pont de Nemours & Co.*, 212 F.2d 623 (3d Cir.), *cert. denied*, 348 U.S. 872, 75 S.Ct. 108, 99 L.Ed. 686 (1954) (holding in a negligence action that manufacturers of dynamite had no duty to warn user of danger of placing dynamite in heated rock because danger was well known to those who supervise blasting operations).

Defendant has not suggested that operation of a bulldozer falls in that category. Instead, it argues that the district court's instruction as to knowledge by the Army was more favorable than required under Pennsylvania law because no warning at all was necessary. It is defendant's premise that the danger was open and obvious, and that the jury so found.

■ In Pennsylvania, liability cannot be imposed on the manufacturer for failure to warn of a danger associated with its product if the danger is or should have been known to the user. *Sherk v. Daisy-Heddon*, 498 Pa. 594, 600, 450 A.2d 615, 618 (1982). *See also* Restatement (Second) of Torts, § 402A, comment j (no warning necessary to make product safe if danger generally known). Therefore, if, as Caterpillar contends, the jury in fact found that the danger was obvious, Caterpillar cannot be held liable because the instruction as to imputation or the Army's knowledge could not have been prejudicial.

■ It is unclear whether the jury found no liability for failure to warn because the danger was or should have been obvious to Brown or whether it concluded that the Army actually knew of the danger, as the trial court erroneously instructed. There is no doubt that, as Caterpillar maintains, the lack of a canopy or other protective device was obvious. But we cannot say as a matter of law that the danger of pushing felled trees along the ground without such a device was equally obvious. It is true that if the jury found the danger was obvious, then it necessarily found the Army should have known of the danger. The converse is not necessarily true; if the jury concluded, as it may have, that the Army actually knew of the danger, it does not follow that the jury implicitly found that the danger was obvious. Thus, we conclude that the jury instruction on adequacy of warning was both erroneous and prejudicial.

## IV.

### DEFECTIVE DESIGN

■ There was testimony on behalf of Caterpillar that Caterpillar offered to "retrofit" the tractor with a ROPS, and that the Army rejected the offer. The trial court, over Brown's objection, instructed the jury that if it found that Caterpillar had offered to retrofit the bulldozer with a protective canopy before Brown was injured, then Caterpillar could not be held liable for Brown's injuries on a theory of defective design. Brown contends that because defendant did not show that the type of device it allegedly offered to install would have prevented his injury, the retrofit offer was irrelevant.

The record contains evidence from which a jury could have concluded that certain protective canopies would not have protected Brown from the injury he suffered. Dr. Romualdi, Brown's expert, so testified. He also stated that if the tractor had been outfitted with a canopy to which some other device could be attached, such as sweeps or longitudinal deflector guards, the injury would have been prevented. *See* App. at 192a–194a, 196a, 212a–213a, 221a–222a; *see also* App. at 39a–41a. Moreover, Caterpillar's own position at trial, as on appeal, was that even if the bulldozer had been equipped with a ROPS, the ROPS would not have protected Brown from the type of injury he sustained.

Caterpillar's alleged offer to retrofit raises issues of proximate cause, a jury issue. *See Hollinger v. Wagner Mining Equipment Co.*, 667 F.2d at 402, 406 (3d Cir. 1981). Accordingly, it was for the jury to decide not only whether Caterpillar offered to retrofit the machine with a protective device but whether the device in question would have prevented Brown's injury. Because the instruction did not allow the jury to determine whether the device Caterpillar offered to retrofit would have protected Brown, the jury never made the full proximate cause determination reserved for it.

Consequently, the instruction on defective design was also erroneous.

## V.

### GOVERNMENT CONTRACTOR DEFENSE

■ Brown contends that the trial court erred in refusing to instruct the jury that

in order to find that defendant complied with the government contract, the jury must find that Caterpillar executed the government contract specifications "carefully". According to Brown, the trial court's refusal to include the term "carefully" "conveyed to the jury the impression that if the affirmative specifications were met, the jury was to find compliance with the contract." Brief for Appellant at 23.[2] We reach the issue since it may arise on remand.

It was Brown's position at trial that Caterpillar disregarded the military specification accompanying the contract that required it to equip the tractor with instruction and warning plates, and therefore did not comply with the contract "carefully." Caterpillar, on the other hand, asserts that Brown misinterprets our holding in *Brown I* on the question whether, in order to raise the government contractor defense, a manufacturer must show that it was *compelled* to design a product in accordance with government specifications or merely that it *complied* with such specifications. In *Brown I*, we distinguished between the two versions of the government contractor defense, one of which calls for compulsion, the other for mere, though exact, compliance. We held that Pennsylvania law does not make compulsion an element of the defense but rather "places no greater obligation on a contractor than to execute the government's specifications 'carefully.'" 696 F.2d at 254. We agree with Caterpillar that the use of the term "carefully" in *Brown I* did not add a further element to the defense. Rather, the issue in a design defect case is whether the design of the

product is or is not that called for by the specifications.

## VI.

### CONCLUSION

Because we conclude that the jury instructions on both defective design and adequacy of warnings were erroneous and prejudicial to Brown and require that a new trial be granted, we need not reach the other procedural and evidentiary issues raised by plaintiff.[3]

For the foregoing reasons, we will vacate the order of the district court entering judgment for defendant on the jury verdict and remand for a new trial.

---

2. The district court charged, "In order to make this defense [government contractor] available to the defendant, you must find ... that the defendant Caterpillar Tractor Company manufactured the tractor bulldozer in *strict* compliance with the Army's specification in all material respects." App. at 546a–47a (emphasis added). We held in *Brown I* that the government contractor defense is established by proving *careful* compliance. Thus, the district court's charge was even more favorable to Brown than that which he claimed he was entitled to under *Brown I*. In any event, we have concluded in

the text that under the opinion in *Brown I*, it was not necessary to give the charge requested.

3. Plaintiff argues that he was entitled to a mistrial because of the trial court's conduct. We conclude that we would not order a new trial on that ground. However, we are concerned that the trial court may have prevented plaintiff's counsel from stating his objection for the record, although we recognize that the cold transcript sometimes may not convey the full circumstances to an appellate court.