Rudolph *v.* Shannopin Coal Company, Appellant.

Argued April 8, 1940; reargued November 11, 1940.

Before
KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*William A. Challener, Jr.,* with him *Frank McC. Painter, Walter C. Montgomery* and *William A. Challener,* for appellant.

*W. Robert Thompson,* for appellee.

OPINION BY STADTFELD, J., June 25, 1940:

Louis J. Rudolph, the decedent, was employed by the Shannopin Coal Company, as a driller of coal. On March 28, 1934, he and a fellow workman were engaged in drilling a hole in the coal at a point located some six or seven feet above the level of the place where the men were standing. The auger of the drill caught a binder or slate band, and caused the drill to kick. The handle struck Rudolph over the upper part of his chest, near the right shoulder. He sank to the ground. He had great difficulty in getting his breath. He required assistance in getting out of the mine. The accident occurred about one hour before quitting time, and Rudolph went home, without finishing out his turn. From that time on, he gave evidence of always being short of breath; he could no longer do work around the house, such as cutting the grass; and he lost thirty or thirty-five pounds in weight from the time of the accident until the time of his death. A few days after the accident, two physicians were called to attend him. Thereafter, he attempted to return to his regular work, but actually worked only three or four days. On April 20, 1934, an X-ray report made on the examination of Rudolph's chest, indicated a mottling over the entire

right and left chests extending into both apices, but gave no evidence of any cavitation. On November 8, 1934, he was sent, on his physician's recommendation, to a sanitarium. The report of another X-ray examination made there about a week after his admission, disclosed a collapse of the apices of both lungs. He returned on December 3, 1934, and died on January 27, 1935 "with a left pleuritis, superimposed on silicosis and chronic emphysema." It first appeared on April 4, 1932, almost two years before the accident, that decedent had been suffering from silicosis. This condition appeared as a result of his physician's diagnosis on that day.

Louis J. Rudolph, in his lifetime, filed a claim petition for compensation. After his death, his widow filed her claim petition, and it was agreed by counsel that the testimony taken in this case should apply to both claims. After a hearing on the petitions and answer, the referee found that "the alleged trauma sustained by Louis J. Rudolph on March 28, 1934, neither caused nor aggravated the condition of silico tuberculosis from which he was suffering and which caused his death on January 27, 1935." The claim was dismissed. On appeal to the board, however, the referee's finding was set aside and the board's own finding was substituted in lieu thereof. The board found that, "the injury by accident of March 28, 1934, prevented him (decedent) from engaging in even light work of a general character from the date of the accident to the date of his death" and "the accident caused such trauma and resulting injury to the physical structure of the decedent, Louis J. Rudolph, as to bring about and cause his death on January 27, 1935." The board made an award, and the award was affirmed by the Court of Common Pleas of Greene County. This appeal followed.

Claimant contends that the blow received by decedent on March 28, 1934, caused or materially contributed to the collapse of his lungs, resulting in his death. De-

fendant urges that deceased died a natural death as a result of the pathological condition of his lungs in which the injury of March 28, 1934, played no part. The only question for determination is whether or not the record discloses sufficient legally competent evidence to sustain the finding of the board, sustaining claimant's contention.

Three expert witnesses were called on behalf of claimant to supply medical testimony. The testimony of two doctors failed, in our opinion, to meet the standard of proof required of expert medical opinion by the decisions of both the Supreme Court and of this court. As pronounced in the case of *Vorbnoff v. Mesta Machine Co.,* 286 Pa. 199, 205, 206, 133 A. 256, the standard of proof required is as follows: "...... if he (claimant) depended upon expert medical testimony for that purpose, the expert would have to state plainly the professional view that the accident had materially 'contributed' *(Farran v. Curtis,* 276 Pa. 553, 556; see also *Clark v. Lehigh V. C. Co.,* 264 Pa. 529, 533) to the ailments from which claimant suffers, in the sense of being, if not the sole cause, then, at least, the 'superinducing cause' thereof: *Jones v. Phila. & Reading C. & I. Co.,* 285 Pa. 317, 320." The testimony of Dr. H. G. Noah, the third expert witness, adequately meets this standard of proof. But the evidence given by this witness, having been made in answer to a hypothetical question, is excepted to by appellant on another ground. It is appellant's contention that the hypothetical question had been improperly framed, with respect to the facts therein assumed, and that the answer given by the expert witness was consequently legally incompetent.

The testimony of Dr. Noah having reference to the hypothetical question is as follows: "Q. Doctor, if you had the history of the patient, who, at the time of the accident in this case was a man suffering from silicosis but still able to perform a full day's work in a coal mine as a coal driller, and on a certain date while drill-

ing in the coal mine on a drill that was operated by two men ...... March 28, 1934, when the drill suddenly stopped after striking a binder of coal and whirled the handle of the drill, which was made of metal, striking the patient on the right side of the chest—What region would you call that, doctor? A. The clavicular region. Q. With sufficient force to throw him to the ground, and that he laid there for a period of five or ten minutes gasping and unable to get his breath, apparently not able to talk during that period, then being assisted home by a fellow workman, and after that he was unable to perform a full day's work. He gradually became weaker, losing weight over a period from March 28, 1934, until January 27, 1935, the date of his death, from 160 pounds to 125 or 130, and that he complained of shortness of breath, and was unable to walk any great distance without sitting down and resting due to that shortness of breath, and that an X-ray plate taken following November, 1934, disclosed a collapse of both apices of the lungs, and the absence of tuberculosis in any state, and the patient gradually grew weaker until in January, 1935, he was confined intermittently to his bed, sometimes being able to get up part of the day and having treatment, and the symptoms being that he suffered considerable pain in his chest, and complained of his inability to obtain sufficient air to breathe, and that he died on January 27, 1935, there being a period elapsing between the date of his injury, March 28, 1934, to January 27, 1935. To what would you attribute his death? ...... A. This is difficult to answer, because of many possibilities, or several possibilities. This would be due, I should believe, to cardiac and respiratory failure as a result of collapse of the lung. Q. And from the history I have given you, doctor, (to) what would you attribute the collapse of the lung? A. Most probably trauma, if the trauma was sufficient, if it is not severe trauma but specific trauma that tears the lung tissue and allows the air to escape in the pleural cavity, there is still a

possibility of tuberculosis bearing a part in the case of death. Q. But if we rule out tuberculosis, then your opinion of death is because of the lung? A. With that information that is the only specific cause I can see. ...:... Q. Then, from the history as given to you, then it is your opinion that the trauma was the cause of the collapse, it is your professional opinion? A. Yes."

The general rule is that a hypothetical question should include a full statement of all material facts, if they are uncontradicted, or such facts as the interrogating party may reasonably deem established by the testimony of his witnesses, but should not assume facts not warranted by the evidence. If opposing counsel are of the opinion that material facts are not included in a hypothetical question, they may incorporate those facts in questions asked on cross-examination, and may also frame questions involving a consideration of facts which they contend are established by the evidence: *Albert v. Phila. R. T. Co.,* 252 Pa. 527, 532, 533, 97 A. 680.

Defendant's counsel, believing that the evidence did warrant an assumption of the presence of tuberculosis in the deceased at the time of the injury, interrogated the witness on cross-examination as follows: "Q. Well, doctor, if this man in April, preceding his death, had silicosis and tuberculosis, you would expect his condition to become progressively worse without the intervention of an injury, would you not? A. Not essentially. Q. It could very well be without the intervention of an injury? A. It might be, but not seeing the patient I am drawing my conclusion from the evidence. A man who is well up to a certain date and then following this time falls into a fatal change, shows a picture as described in this case. Even if it were tuberculosis I think you would have to consider that the trauma opened up active infection."

The only evidence on the question of tuberculosis consists of two X-ray reports and the testimony of Dr.

Stahlman, called on behalf of the claimant. The first X-ray report, dated April 20, 1934, and signed by Dr. George H. Hess of Uniontown Hospital, states the following conclusion: "Part of the mottling in this chest may be the result of silicosis from the rock dust but in my opinion there is also a miliary tuberculosis, and believe patient should be treated as a case of pulmonary tuberculosis." Dr. Stahlman, however, testified that an analysis of Rudolph's sputum, made on May 3, 1934, revealed a "negative" result. He further stated that the report of an X-ray taken at Mt. Alto Sanitarium in November revealed extensive anthracosis and a collapse of the apices of both lungs. His testimony, given on this report, said nothing as to its disclosing the presence of any tubercular infection. Counsel for claimant deemed this evidence sufficient to warrant the express exclusion of the tubercular factor from the hypothetical question. Counsel for defendant, on the other hand, considered this evidence as establishing the presence of tubercular infection in the deceased. He conducted his cross-examination accordingly.

Considering the formulation of the hypothetical question here involved, together with the full extent of the cross-examination to which the witness had been subjected, we cannot regard the appellant's objection to the competency of the evidence as being well taken. On direct examination, Dr. Noah had, in effect, expressed his opinion that the deceased had suffered a collapse of the apices of the lungs as a result of the trauma, which collapse eventually resulted in his death. On cross-examination, the witness assumed that the deceased had tuberculosis and, nevertheless, arrived at the conclusion that the trauma opened up an active infection, resulting in a fatal change ending in death.

The lay testimony established the fact of decedent's complete physical breakdown—his total inability to do any work, his shortness of breath and his loss of weight —immediately and directly following the accident.

When this sequence of events is considered in connection with the interpretation given it by the competent medical evidence, the testimony is sufficient to support the findings of the board: See, *Utzman v. Penna. Rubber Co. et al.,* 96 Pa. Superior Ct. 463; *Fillman v. W. H. & L. C. Wolfe,* 100 Pa. Superior Ct. 306. The evidence may not, on appeal, be weighed as to its probative force and effect and the findings changed by the court to its own belief in that respect: *Robertson v. Rieder & Sons,* 114 Pa. Superior Ct. 518, 521, 174 A. 604; *Harmon v. Knoll,* 129 Pa. Superior Ct. 390, 392, 195 A. 448.

The judgment of the court below is affirmed.

KELLER, P. J. dissents.