450 A.2d 710

William T. EVANS and Sandra Evans, husband and wife, Appellants,

v.

Paul L. THOMAS and Earl A. Thomas, individually and as co-partners, trading as Thomas Brothers Natural Gas Company.

Superior Court of Pennsylvania.

Argued June 10, 1980.

Filed Sept. 10, 1982.

Petition for Allowance of Appeal Denied Feb. 8, 1983.

Edward F. Silva, Philadelphia, for appellants.

William G. Ross, Bethlehem, for appellees.

Before BROSKY, HOFFMAN and CIRILLO,* JJ.

BROSKY, Judge:

The appellants, William and Sandra Evans, brought a cause of action against the appellees, Paul and Earl Thomas individually and as co-partners trading as Thomas Brothers Natural Gas Company, concerning a tumultuous explosion that took place in their residence, when William Evans struck a match to relight an extinguished pilot light in a propane gas hot water heater. As a result of the explosion, William Evans was severely burned. The Evanses contend that the explosion occurred as the result of the Thomases defective product. They assert their claim pursuant to Section 402(a) of the Restatement of Torts, Second. The jury awarded the verdict to the Thomases. The Evanses moved for a new trial. They appeal from the denial of that motion.[1]

The Evanses assert that the verdict was against the weight of the evidence and that the trial court erred "in allowing . . . [Paul] Thomas to render an opinion based on the hypothetical questions posed by . . . [Thomas'] counsel and in refusing to strike the opinion testimony of [Paul] Thomas" (Appellants' brief at page 3). We affirm.

In *Antolik v. Kerstetter,* 278 Pa.Super. 55, 56, 419 A.2d 1353, 1353 (1980), we said:

---

* Judge Vincent A. Cirillo of the Court of Common Pleas of Montgomery County, Pennsylvania is sitting by designation.

1. In *Evans v. Thomas,* 245 Pa.Super. 626, 372 A.2d 436 (1977), we affirmed the decision of the trial court refusing to permit the Thomases to join additional defendants.

Although the province of this court is generally limited with respect to the facts to a determination of whether there is evidence to support the verdict, we may grant a new trial on the grounds that the verdict is against the weight of the evidence if the jury's verdict is so contrary to the evidence as to shock one's sense of justice. *Albert v. Alter,* 252 Pa.Super. 203, 381 A.2d 459 (1977) (allocatur refused) and the other cases therein cited.

The facts involved in this case are as follows. Sandra Evans testified that in June of 1973, the Evanses decided to use a heater which could employ propane gas to heat their water. In August, she called the Thomases in order to purchase propane gas. A tank of gas was delivered on August 4 and placed outside their cellar door, underneath a porch. On August 7, William Evans, using the instructions provided by the Thomases, lit the pilot light on the heater which was housed in their cellar. The couple had hot water for several hours. However, the heater eventually stopped working. Later that day, at about 5 p. m., William Evans attempted to relight the heater, again using the instructions provided by the Thomases. An explosion resulted from Mr. Evans' efforts. He was severely injured. Mrs. Evans, who was on the first floor of the house, was also injured, though not seriously.

The record discloses that the essence of the Evans' argument was that the gas was inherently dangerous and that as such the Thomases were obliged to take reasonable steps to protect the buyer, specifically, that the gas should have been and was not odorized. Thomases argues that the gas was odorized.[2]

---

**2.** The evidence sought to be introduced by the Thomases reflected their company practice concerning the odorization of natural gas products. In *DeMarines v. KLM Dutch Airlines,* 580 F.2d 1193 (3rd Cir. 1978), that court held that proof of a record of absence of claims by other passengers related to an alleged accident which occurred during a flight of the airline. See also, *Walker v. Trico Mfg. Co., Inc.,* 487 F.2d 595 (7th Cir. 1973); *Becker v. American Airlines, Inc.,* 200 F.Supp. 243 (S.D.N.Y.1961); *Darrough v. White Motor Co.,* 74 Ill. App.3d 560, 30 Ill.Dec. 467, 393 N.E.2d 122 (1979); cases cited in *Annotation,* 31 A.L.R.2d 190 (1953 Supp.); C. McCormick, *Law of*

■ William Evans testified that when he went to relight the pilot light on the hot water heater that he did not smell any odor. Other witnesses were presented by the Evanses who indicated that at or near the time of the incident, that they had smelled no gas odor. The Evanses argued that the lack of odor proves the existence of a defect.[3] The Thomas-

> *Evidence,* § 200 (2d ed. 1972); *McSparran v. Pennsylvania Railroad Company,* 258 F.Supp. 130 (1966). Compare: *Walker v. Trico Mfg. Co.,* 487 F.2d 595 (7th Cir. 1973). However, in *Hessler v. Hillwood Mfg. Co.,* 302 F.2d 61 (6th Cir. 1963), that court held that the history of the general "excellence" of defendant's product is "not relevant on the issue" of whether a particular product has "been defectively manufactured." Our Supreme Court has held that custom and practice prevailing in a particular industry may be admitted into evidence in order to disprove negligence. *Jemison v. Pfeifer,* 397 Pa. 81, 152 A.2d 697 (1959); *Marin v. Nadick,* 287 Pa.Super. 37, 429 A.2d 707 (1981).
>
> We note however, that no specific objection was made regarding Paul Thomas' testimony describing the custom and practices of his company and the odorization of his product. Therefore, we consider this issued waived. *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974).

3. It is clear that the issue regarding the existence of a defect was properly before the jury. In *Greco v. Bucciconi Engineering Co.,* 407 F.2d 87 (3rd Cir. 1969) that court stated:

> Since appellee did not introduce substantial evidence relevant to appellant's negligence in the manufacture or design of the piler, we must first determine whether it is the law of Pennsylvania, as appellee asserts, that a plaintiff in a strict liability case can establish a "defective condition" within the meaning of Section 402A by proving that the product functioned improperly in the absence of abnormal use and reasonable secondary causes. [Footnote omitted.] That this is the law appears evident from the Pennsylvania Supreme Court's decision in *Bialek v. Pittsburgh Brewing Co.,* 430 Pa. 176, 242 A.2d 231 (1968). There, plaintiff brought suit under Section 402A for personal injuries suffered when a bottle allegedly exploded in his hand. He denied causing the explosion by striking the bottle in any way, and he attempted to present expert testimony concerning the cause of the explosion. The court held that such testimony was proper, albeit unnecessary, since "[b]oth plaintiff and Leon Dorsey testified the bottle exploded spontaneously. Their testimony alone, given the fact that an explosion was not a physical impossibility, was sufficient to make the issue a jury question...." [Footnote omitted.] 430 Pa. at 184, 242 A.2d at 235.

The Evanses testified they had smelled no gas prior to the explosion. They presented several witnesses, David Hiles and Jessie Hiles, who testified that they did not smell the odor customarily associated with propane gas.

es, through Paul Thomas, presented lengthy testimony concerning the odorization of the gas cell. The testimony indicated, at length, the process by which gas is odorized by the refiner and by the Thomas Brothers Natural Gas Company. However, Paul Thomas testified that the tank in which the gas in this particular incident was stored was picked up at the Evans' home shortly after the incident and put into service elsewhere. He stated he therefore had no knowledge of the condition of this particular tank and whether the gas contained therein had been odorized.

Our Supreme Court adopted the § 402A of the Restatement of Torts Second in *Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966).

Section 402A reads as follows:

Section 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to the liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold. (2) The rule stated in Subsection (1) applies although (a) the seller has exercised all possible care in the preparation and sale of his product, and (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

In *Pegg v. General Motors Corp.,* 258 Pa.Super. 59, 70, 391 A.2d 1074, 1079 (1978), we said:

The purpose of the civil law, specifically of § 402A, has nothing to do with defining a given crime, or with proscribing punishment proportional with that crime. Rather, as has been discussed, it is to ensure that a manufacturer does not expose persons to defective products, the accomplishment of this purpose being sought by providing that if the manufacturer does expose persons to defective products, it will be liable to compensate them for their resulting injuries.

■ Strict liability under Section 402A requires the plaintiff to prove that the product was "in a defective condition" and that the defect caused the injury. *Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 337 A.2d 893 (1975) (plurality opinion). However:

The seller of a product is not responsible for harm caused by such inherently dangerous products such as whiskey or knives that despite perfection in manufacture design or distribution can cause injury.

*Id.,* 462 Pa. at 95, 337 A.2d at 899. Finally, "Whether a product is inherently dangerous is a function of the extent to which the dangers are technologically unavoidable and the public need for the product great. See *Incollingo v. Ewing,* supra, 444 Pa. at 287–288, 282 A.2d at 219 [444 Pa. 263, 282 A.2d 206 (1971)]. Prosser, supra, [Law of Torts], § 99 at 660–661." *Pegg,* supra, 258 Pa.Super. at 75, 391 A.2d 1082.

■ We do not find any Pennsylvania case in which our courts have ruled upon the weight to be given evidence introduced by a defendant in a strict liability action in tort concerning its similar actions with regard to a product. However, we are satisfied that under the circumstances of this case that the conflict in testimony was properly submitted to the jury and that its decision was not so "contrary to the evidence as to shock one's sense of justice." *Antolik v. Kerstetter,* supra, 278 Pa.Super. at 56, 419 A.2d at 1353.

Next, the Evanses assert the trial court erred in allowing Paul Thomas "to render an opinion on the hypothetical questions posed by his counsel and in refusing to strike the opinion testimony of Thomas." (Appellant's brief page 2). In *Ranieli v. Mutual Life Ins. Co. of America,* 271 Pa.Super. 261, 413 A.2d 396 (1979), we said:

The continued use of the hypothetical question placed to an expert witness has occasionally been assailed as anachronistic and confusing, McCormick, Evidence § 16 (1954), but it remains a viable and accepted method of allowing the expert witness to render an opinion based on facts not known to him personally. See *Houston v. Canon*

Bowl, Inc., 443 Pa. 383, 278 A.2d 908 (1971); *Abbott v. Steel City Piping Co.,* 437 Pa. 412, 263 A.2d 881 (1970); *Gordon v. State Farm Life Insurance Co.,* 415 Pa. 256, 203 A.2d 320 (1964). In forming the hypothetical, however, it is necessary that all information contained therein be properly of record. See *Houston v. Canon Bowl, Inc.,* supra.; *McKenzie v. Cost Brothers, Inc.,* 260 Pa.Super. 295, 394 A.2d 559 (1978); *Commonwealth v. Pilosky,* 239 Pa.Super. 233, 362 A.2d 253 (1976); *Hussey v. May Department Stores, Inc.,* 238 Pa.Super. 431, 357 A.2d 635 (1976); 2 Wigmore, Evidence 3d ed. § 682 (1940). *See generally* 56 A.L.R.3d 300 § 6[a] (1974). Absent this record foundation, the information proffered in hypothetical questions could be so manipulated as to yield almost any response, and in so doing, seriously confuse the finder of fact. The expert's opinion is properly admissible to illuminate obscure and obtuse areas of knowledge. The hypothetical question should be employed to facilitate this end, focusing the witness' expertise onto the narrow issue under consideration; its purpose is not to further obfuscate the complex evidentiary labyrinth through which the finder of fact must carefully tread. Of course, such record evidence upon which the expert relies may be based upon personal examination, the assumed truth of the testimony of other witnesses, or upon a combination of these sources. *Hussey v. May Department Stores, Inc.,* supra. The pivotal question in the case at bar is thus whether the two contested pieces of information were properly of record.

The question which was asked Paul Thomas follows: Q. Assume those facts that you have heard—and I don't want to repeat everyone of them over this last two days, but the facts that you have heard concerning this case— that a delivery was made at the home of the Evanses and assume that an explosion occurred and that Mr. Evans did not smell the propane gas, and further assume that this product that you were using at the time had been purchased from the Atlantic Richfield Company and/or the Sun Oil Company in a 10,000 gallon truck, and assume

further that this truck had been used on numerous occasions before the pickup of the deliveries that we're concerned with, and assume that this truck delivered the propane gas to your Hometown Office Supply Area and that it was deposited in a 30,000 gallon tank, and assume that that tank had been used for several years—nine years I believe you testified—and further assume that all of the invoices that you have checked and that you have concerning purchases from June, July, and August of 1973 indicate that you have purchased liquid propane which has ethyl mercaptan in it in quantities of 1 pound per 10,000 gallons and 1½ pounds per 10,000 gallons, and assume further that the propane was taken from the 30,000 gallon tank and placed into a small tank, and then assume further, sir, that the propane gas was delivered, and assume further that the gas was taken and placed in a tank designated at Tank No. 20137 and that that tank belonged to you and was a 100-pound capacity, and assume that it was delivered to the Evanses on August 4th of 11973, do you have an opinion, with reasonable certainty, that that tank of gas contained an odorant known as ethyl mercaptan in accordance with the regulations that you were required to follow in the industry?

Paul Thomas was asked to answer this question viewing it from his knowledge of what had occurred on August 4, 1973, the day the tank of gas was delivered, and from his knowledge of the events which transpired on August 7, 1973, the date of the explosion. He responded affirmatively to the question with respect to both dates.

The trial court states in its opinion:

Plaintiffs strenuously contend that defendant Paul Thomas' opinion elicited by the hypothetical question should have been stricken because Mr. Thomas stated on cross-examination that he had no personal knowledge as to the condition of the specific tank or whether there was ethyl mecaptan in it on the date of the explosion. Such an argument begs the question. It was precisely because Mr. Thomas did not have such personal knowledge that we permitted him to render an expert opinion on whether the

tank was odorized based on his knowledge of the acquisition and delivery process at about the time of the explosion.

We permitted plaintiffs' expert witness to express his opinion based on the evidence developed during the plaintiff's case and we permitted defendant to express his expert opinion on the facts developed on both sides of the case. We find no error in permitting the opinion of either expert to go to the jury.

Counsel had the opportunity during cross-examination to raise questions for the jury's consideration relating to whether all material facts had been covered in the hypothetical question. *Gordon v. State Farm Life Insurance Co.*, 415 Pa. 256, 203 A.2d 320 (1964).

(Trial Court opinion at page 7.)

█ The Evanses argue and we agree that hypothetical question clearly omits facts. It assumes the truck used to pick up the gas from the refinery had been used previously. It assumes the gas was placed in a 30,000 gallon tank. That the gas was pumped from a 30,000 gallon tank and that the Evanses did not smell the propane gas. The record indicates that had the truck been used previously, a residue of the substance used to odorize the gas would have remained in the truck and served to odorize the gas delivered to the Evanses. This same phenomenon occurs when tanks are used successive times. However, the Evanses clearly pointed out to Paul Thomas on cross-examination that the truck may have been used for the first time to haul the gas which exploded in the Evanses house, and that Thomas had no personal knowledge that the gas was pumped from a 30,000 gallon storage tank. The record also indicates that there was testimony by the Evanses and two other witnesses, David Hiles and Jessie Hiles, that they could not smell propane gas shortly before or near the explosion.

In *O'Malley v. Peerless Petroleum, Inc.*, 283 Pa.Super. 272, 286–289, 423 A.2d 1251, 1259–1260 (1980), we said:

The hypothetical put to Mr. Karam clearly omits the facts which the Sewer Authority alleges, but we do not think

this omission was fatal to the question's validity. The law on hypothetical questions in Pennsylvania also states that "[i]f opposing counsel are of the opinion that material facts are not included in a hypothetical question, they may incorporate those facts in questions asked on cross-examination, and may also frame questions involving a consideration of facts which they contend are established by the evidence: *Albert v. Philadelphia R.T. Co.,* 252 Pa. 527, 532, 533, 97 A. 680 (1916)." *Rudolph v. Shannopin Coal Co.,* 142 Pa.Super. 389, 18 A.2d 329 (1940). See also *Gordon v. State Farm Life Ins. Co.,* 415 Pa. 256, 203 A.2d 320 (1964); *Price v. Yellow Cab Co. of Phila.,* 443 Pa. 56, 278 A.2d 161 (1971). We cannot say that it was error to allow Mr. Karam to answer the question as put to him, particularly where the Sewer Authority could have supplied the missing facts on cross-examination.

We believe that our analysis presented in *O'Malley,* supra, is clearly applicable to the instant case. We are unable to say that it was error to allow Paul Thomas to answer the hypothetical question as put to him, where the Evanses could have and, in part did, provide Thomas with missing and inconsistent facts on cross-examination. Accordingly, we affirm the order of the trial court.

Judgment affirmed.