419 A.2d 1353

**Andrew ANTOLIK, Jr., Appellant,**

v.

**Danny Lee KERSTETTER and Robert C. Kerstetter.**

Superior Court of Pennsylvania.

Argued March 3, 1980.

Filed June 2, 1980.

Petition for Allowance of Appeal Denied Nov. 19, 1980.

Clement E. Kisailus, Wilkes–Barre, for appellant.

Robert L. Walsh, Sunbury, for appellees.

Before CERCONE, President Judge, and WATKINS and MONTGOMERY, JJ.

MONTGOMERY, Judge:

This appeal by the plaintiff, Andrew Antolik, Jr., is from an order denying him a new trial following a verdict for the defendant, Danny Lee Kerstetter,[1] in an action of trespass arising from a collision of their automobiles.

█ Although the province of this court is generally limited with respect to the facts to a determination of whether there is evidence to support the verdict, we may grant a new trial on the grounds that the verdict is against the weight of the evidence if the jury's verdict is so contrary to the evidence as to shock one's sense of justice. *Albert v. Alter*, 252 Pa.Super. 203, 381 A.2d 459 (1977) (allocatur refused) and the other cases therein cited.

█ In reviewing the record in this case, our sense of justice is shocked by the verdict and a new trial will be granted for that reason alone.

We find no important conflicts in the testimony. The record presents a clear picture as follows:

The accident occurred about 11:40 A.M. on November 11, 1972 within the intersection of Pennsylvania Route 35 with legislative Route 54041, known as Middle Creek Road, in the Village of Kantz, Snyder County. It was a violent rear end collision. Plaintiff's 1968 Ford Mustang, while moving between 10 and 15 miles per hour, was struck directly in the rear by the front of defendant's 1968 Plymouth Sedan, which was traveling 20 to 25 miles per hour. The Ford came

1. By stipulation, Robert C. Kerstetter was dropped as a party defendant prior to trial.

to rest beyond the intersection while the Plymouth stopped in the intersection.

Plaintiff had been traveling westwardly on Route 35 down a hill described as about 1305 feet in length from the top to the intersection and with a 25% grade. The road was of a two car width, about 24 feet wide, with ten–foot berms which narrowed to 4 to 6 feet as it neared the intersection. It was paved with black top macadam and was wet at the time because a drizzling rain was falling.

When plaintiff came over the crest of the hill, he ceased to accelerate, but did not apply his brakes. When he was halfway down, he was traveling between 40 to 45 miles per hour (the speed limit was 55 miles per hour). When fifty yards from the intersection, his speed had slackened to 25 to 30 miles per hour and as he went through the intersection, his speed had been reduced to 10 to 15 miles per hour. At no time did he apply his brakes or give a signal that he intended to make a turn at the intersection. Plaintiff was aware that the defendant was following him down the hill, having seen him through his rear view mirror come over the crest when he was halfway down the hill.

The defendant came over the crest at 50 miles per hour and saw plaintiff's car ahead of him halfway down the hill. When one quarter down, defendant realized the space between the two cars was diminishing and when halfway down realized plaintiff's car was decelerating. He then applied his brakes lightly and later harder, causing his car to go into a skid at a point where about three fourths distance down the hill or about 325 feet from the intersection. He skidded 325 feet and was traveling about 25 to 30 miles per hour when the impact occurred in the intersection. He saw no brake lights on plaintiff's car or any turn signals, although it seemed to him that plaintiff had stopped. He did not swerve to the left because he thought plaintiff might make a left turn; and he did not swerve to the right because the berm was too narrow at that point to permit him to pass. It is difficult to see how he could have done either with his car in a skid. There were no other vehicles on the road at the time of the accident.

Defendant, who was very familiar with this hill and intersection, testified that he thought the plaintiff's car had stalled since it slowed suddenly near the intersection, but he admitted that it was actually traveling not more than 10–15 miles at that time. There was no other evidence that plaintiff's car had come to a stop before entering the intersection.

We have recognized that the mere happening of a rear end collision does not constitute negligence as a matter of law on the part of the operator of the rear automobile and that the burden is on the plaintiff to prove such negligence. *Floravit v. Kronenwetter*, 255 Pa.Super. 581, 389 A.2d 130 (1978), citing *Cirquitella v. Callaghan*, 331 Pa. 465, 200 A. 588 (1938). However, in the present case, the negligence of the defendant as demonstrated by his own testimony is so apparent, we have difficult in seeing how the jury found in his favor or why the lower court did not grant a new trial. The defendant's manner of operation of his automobile was clearly in violation of the Motor Vehicle Code, as amended November 19, 1959, P.L. 1531 Sect. 1; 75 P.S. 1002(a) which provides as follows:

"Any person [having] a vehicle on the highway shall drive the same at a careful and prudent speed, not greater than nor less than is reasonable and proper, having due regard to the traffic surface, and width of the highway, and of any other restrictions or conditions when and where existing; and no person shall drive any vehicle, upon a highway at such a speed as to endanger the life, limb, or property of any person, nor at a speed greater than will permit him to bring the vehicle to a stop within the assured clear distance ahead." (Underline Added)

Furthermore, we find an absence of any evidence to charge plaintiff with contributory negligence. The only indication of contributing negligence is the statement of defendant that he thought the plaintiff's car had stalled, because, near the intersection it slowed suddenly. However, the defendant's own later testimony refuted this statement in that he admitted that plaintiff could instead have been traveling at 10 to 15 miles per hour.

We find no evidence in this case to support a verdict for the defendant.

The order of the lower court denying plaintiff a new trial is reversed and a new trial awarded.