450 A.2d 40
**COMMONWEALTH of Pennsylvania**
v.
**Cedrioue Omar MILLER, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 9, 1981.

Filed Aug. 27, 1982.

Gary S. Fronheiser, Assistant Public Defender, Reading, for appellant.

George Yatron, District Attorney, Reading, for Commonwealth, appellee.

Before HESTER, CIRILLO and McEWEN, JJ.

CIRILLO, Judge:

Appellant, Cedrique O. Miller,[1] was convicted in a jury trial of resisting arrest.[2] Appellant filed motions for new trial and in arrest of judgment which were denied. He was then sentenced to a term of imprisonment of nine months to two years. This appeal followed.

Appellant asserts that 1) the evidence was insufficient, as a matter of law, to sustain a conviction, 2) the verdict was contrary to the weight of the evidence and 3) the trial court erred in denying defense counsel's motion for a mistrial when the Commonwealth introduced evidence of appellant's parole violations. Appellant's contentions are without merit and we, therefore, affirm.

In appraising the sufficiency of the evidence, we must apply a two-part test. First we must regard the evidence in the light most favorable to the Commonwealth, accepting as true all evidence upon which the factfinder could properly have based its verdict; then we must ask whether that evidence with all reasonable inferences from it, was sufficient to prove guilt beyond a reasonable doubt. *Commonwealth v. Edwards,* 493 Pa. 281, 426 A.2d 550 (1981).

The record so viewed, establishes that on March 20, 1980, at approximately 1:15 p.m., two Pennsylvania state parole officers were "tipped off" by the West Reading Borough Police that appellant, a parolee, was living in a West Reading motel. Appellant was required, as a condition of parole, to notify his parole officer of any change in his address, failure to do so constituted a parole violation. Appellant had given his parole officer another address in Reading as his place of residence.

Upon receiving the tip as to appellant's whereabouts, the parole officers proceeded to the motel, where they were advised that the room in question was registered under the

1. a/k/a Mike Peoples.

2. Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa. C.S.A. § 5104.

name of "Mike Peoples." One of the staff of the motel admitted the officers to the room. Upon entering the room, the officers noticed appellant sleeping and noted several parole violations [3] around the room. Appellant was advised that he was under arrest for violation of parole and was told to get dressed. After dressing, appellant "bolted" from the room and got 20 feet outside, only to run into a local police officer coming into the motel. The police officer attempted to restrain appellant but it took the combined efforts of two police officers and the two parole officers to subdue him and take him into custody.

Appellant first contends that the evidence was insufficient to sustain a conviction. Specifically, appellant argues that to be guilty of resisting arrest there must be a "lawful arrest" and here the arrest was illegal because it was made without an arrest warrant.

The offense of Resisting Arrest or other law enforcement is defined as:

A person commits a misdemeanor of the second degree if with the intent of preventing a public servant from *effecting a lawful arrest* or discharging any duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or *employs means justifying or requiring substantial force to overcome the resistance.* (emphasis added)

Act of December 6, 1972, P.L. 1482, No. 334, 18 Pa. C.S.A. § 5104.

It is well-settled law that it is for the trial court and not the jury to determine whether the arrest was lawful. *Commonwealth v. Franklin,* 248 Pa. Super. 145, 374 A.2d 1360 (1977). The lower court was correct in its conclusion that the arrest by the parole officer was lawful. When performing his normal duties, a parole agent is not required to obtain a search warrant. *Commonwealth v. Brown,* 240 Pa. Super. 190, 199, 361 A.2d 846, 850 (1976). A parole

---

**3.** Testimony was limited to the fact that parole violations were the reason for the arrest, enumeration of what the violations actually were was not offered.

officer has the authority to arrest parolees without a warrant for visible violations of parole. *Commonwealth v. Pincavitch,* 206 Pa. Super. 539, 214 A.2d 280 (1965). This authority is provided by Section 331.27, Parole Officers as peace officers; powers, which states:

> Parole officers appointed by the board are hereby declared to be peace officers and are hereby given police power and authority throughout the Commonwealth to arrest without a warrant, writ, rule or process any parolee or probationer under the supervision of the board for failing to report as required by the terms of his probation or parole, or for any other violation thereof.

Act of August 6, 1941, P.L. 861, § 27, 61 P.S. § 331.27. Reviewing the evidence in light of the applicable law, we find it is sufficient to sustain appellant's conviction.

Appellant's second contention is that the verdict was against the weight of the evidence. It is settled that a new trial should be awarded on the ground that the verdict is against the weight of the evidence only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. *Antolik v. Kerstetter,* 278 Pa. Super. 55, 419 A.2d 1353 (1980). The decision to grant or deny a new trial on this ground lies within the sound discretion of the trial judge. *Junk v. East End Fire Dept.,* 262 Pa. Super. 473, 396 A.2d 1269 (1973), and will be reversed only if he acts capriciously or palpably abuses his discretion. *Antolik, supra.* In the instant case, the evidence was overwhelming as to appellant's guilt on the charge of resisting arrest. The uncontested testimony showed that when appellant bolted from the motel room, it took two parole officers to restrain him and take him into custody. Based on the above, it is clear that the jury's verdict of guilty was not so contrary to the evidence as to shock the court's conscience. Therefore, we find that the trial judge did not abuse its discretion in refusing to grant a new trial on the ground that the jury's verdict was against the weight of the evidence.

Appellant's third and final contention is that the lower court committed reversible error in refusing to declare a

mistrial when the Commonwealth brought forth evidence of appellant's parole violations. Specifically, appellant argues that this was tantamount to informing the jury that appellant had a prior criminal record and this was highly prejudicial.

It is well settled that the admission and exclusion of evidence is a matter within the sound discretion of the trial judge. *Commonwealth v. Krajci,* 283 Pa. Super. 488, 424 A.2d 914 (1981). Accordingly, reversal by an appellate court is inappropriate unless the judge's ruling on such matters amounts to an abuse of discretion.[4] *Commonwealth v. Niemetz,* 282 Pa. Super. 431, 422 A.2d 1369 (1980).

The general rule concerning the admissibility of prior convictions is set forth in *Commonwealth v. Stokes,* 279 Pa. Super. 361, 371–372, 421 A.2d 240, 245 (1980):

It is well-established that evidence of other criminal activity generally is inadmissible against a defendant at his trial on another charge. The reason behind this rule is that the Commonwealth should probe beyond a reasonable doubt that a defendant has committed the particular crime of which he is accused, without stripping him of the presumption of innocence by proving that he has committed other criminal acts. However, when such evidence is offered to prove matters other than criminal activity, the trial judge, in his discretion may admit it.

We have noted in the past that our cases have not established a per se rule requiring a new trial for every prejudicial reference of this type. The prejudicial effect of the reference may be overcome by cautionary instructions or an appellate court may find that any error was harmless. (citations omitted)

---

**4.** Our Supreme Court defined abuse of discretion: An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality prejudice, bias or illwill, as shown by the evidence or the record, discretion is abused. *Commonwealth v. Niemetz,* 282 Pa.Super. 431 n. 12, 422 A.2d 1369, 1376 n. 12 (1980), quoting, *Man O'War Racing Ass'n, Inc. v. State Horse Racing Comm'n.,* 433 Pa. 432, 451 n. 10, 250 A.2d 172, 181 n. 10 (1969).

Another exception to the above rule of exclusion was stated in *Commonwealth v. Stevens,* 237 Pa. Super. 457, 463, 352 A.2d 509, 512 (1975):

There are however, other purposes for which evidence of separate criminal acts may be offered, and when so offered the rule of exclusion is not applicable. One of these purposes is to complete the story of the crime for which the accused is being tried *by proving the immediate context of events.* This is often classified as proving a part of the "same transaction" or the "res gestae." The Pennsylvania Supreme Court recently discussed this exception, stating that such evidence is admissible where " 'such prior conviction or criminal act formed a part of a chain, or was one of a sequence of acts, or became part of the history of the event on trial, or was part of the natural development of the facts.' " (citations omitted) (emphasis added).

In order to prove the charge against appellant of resisting arrest, the Commonwealth had to prove among other things, that appellant was being "lawfully arrested." In establishing that a "lawful arrest" was taking place, the Commonwealth properly showed appellant was being arrested by two parole officers for violations of parole. The evidence was offered for the limited purpose of demonstrating the circumstances surrounding the arrest and to place the offense charged in context. Appellant would have this element of the offense tried in a vacuum and without furnishing an explanation as to who the arresting officers were and the reasons for the arrest. In considering a charge of resisting arrest, the factfinder has a right to know the reason for which appellant is being arrested. *See Commonwealth v. Markle,* 245 Pa. Super. 108, 369 A.2d 317 (1976) (court held it was proper on an indictment for escape to permit the Commonwealth to present evidence that appellant was being held for a felony at the time of the escape). In the instant case, the Commonwealth did not attempt to bring out the details of the parole violations or to develop the specifics of the offense for which appellant was original-

ly convicted and subsequently placed on parole. The trial judge in his instructions to the jury charged that any evidence of appellant's prior criminal record was not evidence of his guilt of this particular charge and the Commonwealth bears the burden of proving each element of the offense beyond a reasonable doubt.

Since the parole violation by appellant was introduced into evidence for a limited purpose and the court instructed the jury as to its limited use, we find that appellant was not prejudiced and the lower court did not abuse its discretion in refusing to grant a mistrial. *See Commonwealth v. Markle, supra; Commonwealth v. Stokes, supra.*

Judgment of sentence affirmed.

McEWEN, J., files a dissenting opinion.

McEWEN, Judge, dissenting:

I respectfully dissent. The appellant was charged with resisting arrest. The Commonwealth must, of course, prove that the appellant offered resistance during an arrest that was lawful. I conclude that the Commonwealth has not established that there was a lawful arrest and, therefore, would reverse the judgment of sentence imposed.

A review of the testimony presented by the Commonwealth reveals that on March 20, 1980, two Pennsylvania Board of Probation and Parole agents were "tipped off" by Officer Spannuth of the West Reading Borough Police that appellant, who was a parolee under the supervision of Parole Agent Richard C. Shaffer, was in room 125 of the Pennview Motel located in Reading. Agent Shaffer accompanied by his partner Agent Robert Reber apparently then proceeded to the West Reading Borough police station and met Officer Spannuth. The testimony of Officer Spannuth indicates that, prior to the departure of the group from the police station, he telephoned the motel and spoke to the desk clerk or manager of the motel to arrange for access to the room in preparation for the search. Officer Spannuth then transported the parole agents in a West Reading Borough police

car to the motel. The testimony of Officer Spannuth established that when they arrived at the motel at approximately 1:15 p.m., both he and Parole Agent Shaffer knocked on the door of the room. Officer Spannuth further testified that, when there was no response to their knocks, "we obtained a pass key to open up the room . . . from a maintenance man . . . employed by the motel." (N.T. Trial 5–6). The testimony of Agent Shaffer established that he had no reason whatsoever to believe that appellant was in violation of parole until *after* they had entered the room.[1]

It was further established that prior to their entry into the room, neither the parole agents nor the police officers had procured a search warrant authorizing their entrance to the room. As the majority noted, once they had entered the room, the officers noticed appellant sleeping on the bed and observed several parole violations around the room.[2]

1. Direct Examination by Assistant District Attorney of Parole Agent Richard C. Shaffer:
   Q. Now in this particular instance, did you have reason to believe, prior to entering that room, that Mr. Miller had violated probation?
   A. No.
   Q. Did you have reason to believe he was living on North Sixth Street [the address of defendant on parole board records] or the Pennview Motel?
   A. North Sixth Street.
   Q. Now when you entered the room, you had determined that he was in violation, right?
   A. Yes.
   Q. All right. And you placed him under arrest?
   A. Yes.
   Mr. Stevens: Cross Examination.
   By Mr. Fronheiser:
   Q. Mr. Shaffer did you say that you had no reason to believe that Mr. Miller was in violation until you entered the room, is that correct?
   A. Pardon me.
   Q. You had no reason, I believe one of your last statements was you had no reason to believe Mr. Miller was in violation of his probation until you entered the room. Is that correct?
   A. That's correct.
   Q. And is it true that you did not have any warrant to arrest?
   A. That is correct.

2. We observe, as has the majority, that there was no evidence presented at the trial, nor is there any indication in the record, as to what the parole violations were.

It was not until after the parole agent had entered the room and had observed the parole violations inside the room, that he informed appellant that he was under arrest. At this point both of the parole agents, as well as Officer Spannuth, were in the motel room. After appellant was informed that he was under arrest he made two requests: (1) that he be permitted to use the phone (2) that he be permitted to comb his hair. After appellant had done so, he bolted from the room but ran directly into Borough Police Chief Crawford who happened to be outside the door. Appellant was finally subdued by the officers after a short struggle.

I would hold that the entry into the room and the search were unlawful and that the parole violations observed as a result of the unlawful entry could not, therefore, provide the probable cause necessary for a lawful arrest of appellant. I would, therefore, reverse the Common Pleas Court which concluded that the warrantless search and subsequent arrest was lawful.

It is clear that a parole officer when acting in the course of his administrative duties need not obtain a search warrant before making a search of the living quarters of a parolee to whom he is assigned. *Commonwealth v. Berry,* 265 Pa. Super. 319, 401 A.2d 1230 (1979). *Commonwealth v. Brown,* 240 Pa. Super. 190, 361 A.2d 846 (1976); *See Smith v. Rhay,* 419 F.2d 160 (9th Cir. 1969).

The Pennsylvania Statute governing the authority of parole agents provides:

Parole officers appointed by the board are hereby declared to be peace officers and are hereby given police power and authority throughout the Commonwealth to arrest without warrant, writ, rule or process any parolee or probationer under the supervision of the board for failing to report as required by the terms of his probation or parole or for any violation thereof. 61 P.S. § 331.27.

The Pennsylvania Board of Probation has the responsibility "to make general rules of conduct and supervision of persons heretofore and hereafter placed upon parole." 61

P.S. § 331.23. These conditions include the requirement that the parolee regularly report to a parole agent, that he live in a specified residence, that he seek permission of the agent before moving or temporarily leaving the jurisdiction, that he avoid "undesirable" companions, the incurring of substantial indebtedness, the excessive use of intoxicating beverages and, that he seek employment. 37 Pa. Code § 63.4; *See Commonwealth v. Brown, supra,* 240 Pa.Superior Ct. at 195, 361 A.2d at 848.

It is the contention of the Commonwealth that these statutes and the foregoing case law are dispositive of the case before us. We are, however, not so persuaded since the evidence presented at the trial of appellant reveals that the Commonwealth did not establish that appellant had failed to report to his parole agent as required by the terms of his parole agreement, but, to the contrary, the Commonwealth established that the parole agents were not aware, in advance of their entry and search, that appellant was in violation of parole. Indeed, the testimony of agent Shaffer makes quite clear that prior to entering the motel room the parole agents had no reason to believe that appellant had in any way violated his parole. While there was an offer of proof to the effect that the Commonwealth would prove that appellant was in violation of the condition that he not change his residence without notifying his parole agent, the Commonwealth did not introduce any evidence at trial as to (1) a parole agreement reflecting a certain address for appellant as a parolee (2) the parole agreement reflecting the agreement of appellant that he would not move from the address without approval (3) the fact that appellant had changed his residence[3] or (4) any other misbehavior of appellant[4].

It has been established that parolees, despite having reduced expectations of privacy because of their status, are

3. *See* footnote 1, *supra.*

4. *See* footnote 2, *supra.*

entitled to the protection against unreasonable searches and seizures afforded by the Fourth Amendment. *See United States v. Bradley,* 571 F.2d 787 (4th Cir. 1978); *Latta v. Fitzharris,* 521 F.2d 246 n. 2 (9th Cir. 1975). While *Commonwealth v. Brown, supra,* makes clear a parole agent does not normally require a warrant, this court also expressed there a certain concern:

> When performing his normal duties, a parole agent is not required to obtain a search warrant. We are, however, cognizant of another distinction cited in relevant case law: Once a parole agent involves the police in the search and arrest of a parolee, upholding the search permits the police to circumvent the warrant requirement in what in reality is the normal function of the police.

*Id.,* 240 Pa.Superior Ct. at 197, 361 A.2d at 850; *See People v. Coffman,* 2 Cal.App.3d 681, 82 Cal.Rptr. 782 (1969). *Cf. People v. Thompson,* 252 Cal.App.2d 76, 60 Cal.Rptr. 203 (1967), *cert. denied,* 392 U.S. 930, 88 S.Ct. 2276, 20 L.Ed.2d 1388 (1968); *People v. Hernandez,* 229 Cal.App.2d 143, 40 Cal.Rptr. 100 (1964), *cert. denied,* 381 U.S. 953, 85 S.Ct. 1810, 14 L.Ed.2d 725 (1965). The Fourth Amendment right of a parolee to be secure against unreasonable searches and seizures is not violated when his living quarters are searched without a search warrant by his parole officer under circumstances where the *parole officer's conduct* is "rationally and reasonably *related to the performance* of his *duty* as a *parole officer.*" (emphasis supplied). *People v. Candelaria,* 63 App.Div.2d 85, 89, 406 N.Y.S.2d 783, 785 (1978) (quoting *People v. Huntley,* 43 N.Y.2d 175, 179, 401 N.Y.S.2d 31, 33, 371 N.E.2d 794, 796 (1977)). While it is true that "the basis for holding that a parolee has diminished Fourth Amendment rights is the necessity for an agent to have free access to supervise the parolee." *Commonwealth v. Brown, supra,* 240 Pa.Superior Ct. at 197, 361 A.2d at 849, it is also every bit as clear that

> [a] parole officer may *not* conduct a warrantless search of items in a parolee's possession while acting on the prior

request of law enforcement officials and in concert with them. The parole officer is in such case acting, not as the supervising guardian, so to speak, of the parolee, but as the very agent of the very authority upon whom the authority for the search warrant is imposed. To permit concerned effort among officials in an attempt... to circumvent [a parolee's] rights cannot be done.

*Smith v. Rhay,* 419 F.2d at 162–163. *Accord, Commonwealth v. Berry, supra; Commonwealth v. Brown, supra; United States v. Hallman,* 365 F.2d 289 (3rd Cir. 1966).

While there is nothing in the record before us which would allow us to conclude with certainty that the police officers engaged the assistance of the parole agents to effect the arrest of appellant and thereby circumvent the warrant requirements of the Fourth Amendment in violation of the principles established in the above cited cases, we nonetheless conclude that this entry and search—conducted without a warrant and without knowledge of parole violation—as well as the subsequent arrest of appellant were unlawful.

This court has held that a lawful arrest is an essential element of the crime of resisting arrest. *Commonwealth v. Stortecky,* 238 Pa. Super. 117, 352 A.2d 491 (1975); *Commonwealth v. Whitner,* 241 Pa. Super. 316, 361 A.2d 414 (1976). Since the Commonwealth has not demonstrated that the arrest was a lawful one it has not adequately established the offense of resisting arrest. Therefore, I would reverse the judgment of sentence and order the appellant discharged.