J.S45036/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,    :    IN THE SUPERIOR COURT OF
                                      :            PENNSYLVANIA
                 Appellee    :
                                        :
                  v.               :
                                        :
BRIAN ANTHONY LEEKS,          :
                                        :
                 Appellant    :       No. 1961 MDA 2014

Appeal from the Judgment of Sentence June 12, 2014
In the Court of Common Pleas of Dauphin County
Criminal Division No(s).: CP-22-CR-0000105-2014

BEFORE: BOWES, WECHT, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:         **FILED SEPTEMBER 30, 2015**

Appellant, Brian Leeks, appeals from the judgment of sentence entered in the Dauphin County Court of Common Pleas. He contends (1) the trial court failed to conduct a sufficient colloquy before allowing him to proceed *pro se*, (2) the verdict was against the weight of the evidence, and (3) the court imposed an excessive and unreasonable sentence. We affirm.

We adopt the recitation of facts as set forth by the trial court. Trial Ct. Op., 6/26/14, at 1-3. On June 4, 2013, following a colloquy, the trial court permitted Appellant to proceed *pro se* with stand-by counsel. On June 6, 2014, following a jury trial, Appellant was found guilty of aggravated

---

[*] Former Justice specially assigned to the Superior Court.

assault[1] and terroristic threats with intent to terrorize another.[2]  On June 12, 2014, Appellant was sentenced to seven-and-a-half to fifteen years' imprisonment.  He was ordered to pay restitution in the amount of $768.30.

On June 23, 2014, appellate counsel filed a post-sentence motion contending his sentence was excessive and the verdict was against the weight of the evidence.  The trial court denied the motion on October 21, 2014.  This timely appeal followed.  Appellant filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal.  The trial court filed a responsive opinion.

Appellant raises the following issues for our review:

> I. Whether the trial court erred by failing to conduct a complete and thorough, on-the-record colloquy of Appellant before allowing him to proceed to his trial *pro se* in violation of Pa.R.Crim.P. Rule 121, resulting in an unknowing, involuntary, and unintelligent waiver of his right to counsel under the Fifth and Sixth Amendments to the United States Constitution and Articles I and V, Section 9 of the Pennsylvania Constitution?
>
> II. Whether the trial court erred in denying Appellant's Post-Sentence Motion where his convictions were against the weight of the evidence so as to shock one's sense of justice where: Appellant was never shown to have engaged in acts which constitute the crimes of which he was convicted, and[ ] Appellant acted in self-defense?
>
> III. Whether the trial court erred in denying Appellant's Post-Sentence Motion where Appellant's sentence of 7.5 to 15 years' incarceration and $768.30 in restitution is

---

[1] 18 Pa.C.S. § 2702(a)(1).

[2] 18 Pa.C.S. § 2706(a)(1).

excessive and unreasonable given Appellant's lack of a significant prior record, this [h]onorable [c]ourt's failure to inquire into Appellant's background during sentencing, and Appellant's significant history of mental health issues?

Appellant's Brief at 7.

First, Appellant argues that when a defendant seeks to waive his right to counsel, the trial court "must conduct a colloquy on the six elements listed in Pa.R.Crim.P. 121." **Id.** at 17. Additionally, he contends "the trial court must inquire about the defendant's age, educational background, and basic comprehension skills." **Id.** at 18. Appellant argues the court did not comply with these precepts. We disagree.

Our review is governed by the following principles:

> A criminal defendant's right to counsel under the Sixth Amendment includes the concomitant right to waive counsel's assistance and proceed to represent oneself at criminal proceedings. **Faretta v. California**, 422 U.S. 806 . . . (1975). The right to appear *pro se* is guaranteed as long as the defendant understands the nature of his choice. [**Id.**] at 835. In Pennsylvania, Rule of Criminal Procedure 121 sets out a framework for inquiry into a defendant's request for self-representation. Pa.R.Crim.P. 121. Where a defendant knowingly, voluntarily, and intelligently seeks to waive his right to counsel, the trial court, in keeping with **Faretta**, must allow the individual to proceed *pro se*. **See also Commonwealth v. McDonough** . . . 812 A.2d 504, 508 ([Pa.] 2002) (concluding that **Faretta** requires an on-the-record colloquy in satisfaction of Pa.R.Crim.P. 121, which colloquy may be conducted by the court, the prosecutor, or defense counsel.)

**Commonwealth v. El**, 977 A.2d 1158, 1162-63 (Pa. 2009) (footnotes and some citations omitted).

Rule 121 provides as follows:

> (2) To ensure that the defendant's waiver of the right to counsel is knowing, voluntary, and intelligent, the judge or issuing authority, at a minimum, shall elicit the following information from the defendant.
>
> > (a) that the defendant understands that he or she has the right to be represented by counsel, and the right to have free counsel appointed if the defendant is indigent;
> >
> > (b) that the defendant understands the nature of the charges against the defendant and the elements of each of those charges;
> >
> > (c) that the defendant is aware of the permissible range of sentences and/or fines for the offenses charged;
> >
> > (d) that the defendant understands that if he or she waives the right to counsel, the defendant will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules;
> >
> > (e) that the defendant understands that there are possible defenses to these charges that counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently; and
> >
> > (f) that the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, these errors may be lost permanently.

Pa.R.Crim.P. 121(A)(2)(a)-(f). In ***Commonwealth v. Phillips***, 93 A.3d 847

(Pa. Super. 2014), this Court stated:

> When reviewing a trial court's basic compliance with the requirements of Rule 121, we do **not** first apply a "totality of the circumstances" test. In this context, we look at the totality of the relevant circumstances only **after** we decide

the trial court has met the minimum requirements of Rule 121, to determine whether the defendant's waiver of the constitutional right to counsel was a knowing, voluntary, and intelligent waiver.

*Id.* at 853-54 (emphases added).[3]

Appellant relies on the following footnote in *McDonough* in support of his argument that the trial court failed to conduct a thorough colloquy because "the court failed to inquire into [Appellant's] age before permitting him to proceed *pro se*." Appellant's Brief at 19.

In addition to these six factors, a waiver colloquy must, of course, always contain a clear demonstration of the defendant's ability to understand the questions posed to him during the colloquy. Although Appellant does not challenge his colloquy in this regard, the record clearly demonstrates that Appellant understood the questions posed during the colloquy. *See infra* p. 507 (prosecutor inquiring during colloquy about Appellant's age, educational background, and basic comprehension skills).

*McDonough*, 812 A.2d 507 n.1.[4]

---

[3] We note that this Court in *Phillips* stated "[t]he court should also inquire about the defendant's age, educational background, and basic comprehension skills. *McDonough*, *supra*." *Phillips*, 93 A.3d at 853. The Supreme Court in *McDonough* did not hold that the court shall elicit the defendant's age in the colloquy. Given the totality of the circumstances test enunciated in *Phillips*, the absence of an inquiry into a defendant's age alone would not be dispositive of whether the defendant's waiver of the right to counsel was knowing, voluntary, and intelligent.

[4] The defendant in *McDonough* contended "his waiver was invalid because it was the prosecutor rather than the judge who conducted the waiver colloquy." *McDonough*, 812 A.2d at 508. Our Pennsylvania Supreme Court rejected this argument. *Id.* at 508-09.

In the case *sub judice*, the following colloquy was conducted by the Commonwealth:

MS. GETTLE:[5] How far did you go in school?

[APPELLANT]: To the 11th –or to the 12th grade.

MS. GETTLE: Did you graduate?

[APPELLANT]: No.

MS. GETTLE: Did you get a GED?

[APPELLANT]: No.

MS. GETTLE: Do you read, write, and understand the English language?

[APPELLANT]: I do.

\* \* \*

MS. GETTLE: [A]re you under the influence of any alcohol or controlled substances that are impacting your ability to understand what you're doing here today?

[APPELLANT]: No.

MS. GETTLE: Now, you take prescription medications, is that correct?

[APPELLANT]: That's correct.

\* \* \*

MS. GETTLE: What types of prescriptions are you prescribed?

---

[5] Jennifer W. Gettle was the Commonwealth's attorney and was instructed by the court to conduct the colloquy after she informed Appellant of the charges he faced and the potential maximum sentences. N.T. Trial, 6/4/14, at 2-4.

[APPELLANT]: [M]y therapist at the jail has tooken [sic] me off the medications. I'm not prescribed any medication at this time.

\* \* \*

MS. GETTLE: What is your diagnosis?

\* \* \*

[APPELLANT]: Major depression, psychotic features or something like that.

MS. GETTLE: . . . And you have been seeing a therapist for that?

[APPELLANT]: I was in CMU, the Case Management Unit. They closed my case out. They said I didn't need it.

\* \* \*

THE COURT: CMU is the mental health component of Dauphin County.

MS. GETTLE: In terms of the fact that you do have a mental health diagnosis and you're not taking your prescriptions at this time, are you having any types of difficulties understanding what you're doing here today?

[APPELLANT]: No.

MS. GETTLE: Now, you've indicated that you do understand the fact that you in this case could have the representation of the Public Defender's Office. You understand that?

[APPELLANT]: I understand that.

MS. GETTLE: You qualify for their services and Ms. [Mary L.] Klatt was representing you in this case.

[APPELLANT]: I understand that.

MS. GETTLE: And that is your—you have a constitutional right to have—

[APPELLANT]: And to refuse counsel also, right?

MS. GETTLE: And to refuse counsel . . . .

\* \* \*

MS. GETTLE: . . .  In terms of the nature of the charges that have been filed against you, do you understand the elements that the Commonwealth must prove beyond a reasonable doubt in this case?

[APPELLANT]: In understand that.

MS. GETTLE: . . . And you've also been advised, and we've talked about already this morning, the different types of sentences if you are convicted of any of those offenses?

[APPELLANT]: I understand that.

MS. GETTLE: Do you understand that if you waive your right to have counsel that you are going to be bound by the same rules, court rules, that apply to attorneys when they try cases?

[APPELLANT]: I understand that.

\* \* \*

MS. GETTLE: Do you understand that there may be possible defenses to the trial and that if you because of the fact that you do not have a law license, you're not necessarily as familiar with the rules, that you can permanently lose those defenses if you do not argue them in court?  Do you understand that?

[APPELLANT]:  I understand.

\* \* \*

MS. GETTLE: Do you understand that in the event that something were to occur during court that procedurally

shouldn't have happened or something of that nature and you don't object, that then later on down the road you can't then say on appeal . . . I missed the objection, you've lost that right to make that objection on appeal? Do you understand that?

[APPELLANT]: What do you mean by that?

MS. GETTLE: . . . Let's say something were to come into evidence and an attorney would normally . . . object to it, the evidence.

If that comes into evidence and if you haven't lodged an objection, then if you are convicted, you can't argue . . . I missed this objection and I should have done this and objected here; you've lost the right to take that any further on appeal. Do you understand that?

[APPELLANT]: I understand that.

*Id.* at 4-9, 11-13. The trial court continued the colloquy, addressed the elements and permissible range of sentences for the charges against Appellant. *Id.* at 13-19.

In the instant case, the trial court opined:

A review of the transcript reflects that the court and the Commonwealth's Attorney fully addressed each requisite element of the colloquy. [Appellant] acknowledged that: he had the right to counsel; he qualified for representation by a public defender; he understood the nature of the charges and possible sentences; if he chose to represent himself, he would be bound by the same rules as an attorney familiar with such rules including rules relating to preservation of rights for purposes of appeal; if he invoked the right to remain silent, he could not present testimony by way of opening or closing statements.

The court further inquired into [Appellant's] ability to understand the proceedings. [Appellant] stated that he had been diagnosed with depression with psychotic features but had been discharged from care. [Appellant]

consistently acknowledged that he understood the information provided. [Appellant's] prior counsel . . . who served as standby counsel, stated that based upon her extensive dealings with him she had no doubt as to [Appellant's] complete competency to stand trial. Nevertheless, out of an abundance of caution, prior to trial, [standby counsel] requested that a mental health advocate meet with [Appellant]. The advocate believed [Appellant] to be competent to stand trial. Further, the court placed on the record its observations of [Appellant] and its conclusion that it found [Appellant] competent to stand trial.

Accordingly, [Appellant] knowingly, intelligently and voluntarily waived the right to counsel.

Trial Ct. Op. at 5.

We find Appellant's claim that the trial court's failure to inquire about his age rendered the colloquy deficient is unavailing. Instantly, the colloquy satisfied Rule 121. *See* Pa.R.Crim.P. 121(A)(2)(a)-(f). Applying the totality of the circumstances test, we find that Appellant's waiver of the constitutional right to counsel was knowing, voluntary and intelligent.[6] *See* ***Phillips***, 93 A.3d at 853-54; ***El***, 977 A.2d at 1162-1163.

Next, Appellant argues "his convictions were against the weight of the evidence"[7] because he "was never shown to have engaged in acts which

---

[6] We note that Appellant's date of birth was readily apparent from the Court of Common Pleas' docket sheet.

[7] We note that in his brief Appellant only addresses the aggravated assault conviction. Appellant's Brief at 21.

[I]t is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must

- 10 -

constitute the crimes of which he was convicted, and [he] acted in self-defense." Appellant's Brief at 20. He contends his "use of force on the victim was justifiable as he believed that such force was immediately necessary to protect him against the victim's hitting him in the head with a towel rack." *Id.* at 22.

Our standard of review is well-established:

> A motion for a new trial alleging that the verdict was against the weight of the evidence is addressed to the discretion of the trial court. An appellate court, therefore, reviews the exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence. The factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. The trial court will award a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining where this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings.

support the claims with pertinent discussion, with references to the record and with citations to legal authorities. Pa.R.A.P. 2119(a), (b), (c). Citations to authorities must articulate the principles for which they are cited. Pa.R.A.P. 2119(b).

This Court will not act as counsel and will not develop arguments on behalf of an appellant.

***Commonwealth v. Kane***, 10 A.3d 327, 331 (Pa. Super. 2010) (some citations omitted). Therefore, we need not consider whether the verdict was against the weight of the evidence for terroristic threats. ***See id.***

***Commonwealth v. Ramtahal***, 33 A.3d 602, 609 (Pa. 2011) (citation

omitted).

Additionally, our Supreme Court opined:

> [A defendant] cannot prevail on his claim merely because he believes that all of the evidence presented at trial, his statement was the most truthful. It is within the province of the jury, as the finder of fact, to decide whether a witness' testimony lacks credibility. The fact that the jury did not credit [the defendant's] statement does not militate that the verdicts are against the weight of the evidence; rather, that merely establishes that the jury did not find [the defendant] to be credible, a conclusion that they [are] empowered to make.

***Commonwealth v. Smith***, 861 A.2d 892, 896 (Pa. 2004) (citation

omitted).

In the instant case, the trial court opined:

> In reaching the verdict of guilty of Aggravated Assault, the jury considered and accepted the evidence that [Appellant] brutally beat [Victim] with a towel bar causing head injury, punched her in the stomach and strangled her to the point of unconsciousness.
>
> In his Statement of Matters Complained of on Appeal, [Appellant] raised the claim that [he] acted in self-defense. The record is devoid of evidence to support [Appellant's] suggestion that he acted in self-defense. Even if the jury considered such claim, it was free to accept the testimony of [the] Detective . . . that he did not observe any bruises or injuries on [Appellant] and therefore conclude that [Appellant] did not act in self-defense.

Trial Ct. Op., at 7.

Victim testified that Appellant chocked her until she lost consciousness and told her if she reported the incident to the police he would kill her. N.T., 6/15/14, at 46.

Detective John O'Connor of the Harrisburg City Police Department testified. *Id.* at 73. He was shown the certification of medical records of Victim from the Harrisburg Hospital on the date of the incident which contained the discharge summary. *Id.* at 76. The discharge summary was read to the jury. It indicated that Victim reported that Appellant physically assaulted her on November 12, 2013. *Id.* at 79. Appellant hit her over the head, choked her around the neck, kicked her in the chest, neck, shoulder, abdomen and back. *Id.* Victim was discharged from the hospital on November 14th. *Id.* at 81.

Detective O'Connor interviewed Appellant on November 14, 2013. *Id.* at 106. He stated that Appellant "was trying to make himself out to be the victim." *Id.* at 107. Appellant told the Detective that Victim "continued to come at him with the metal pole." *Id.* at 113. He claimed to be defending himself and he "pushed her again and she hit her head on the wall and ended up in the bathtub." *Id.*

Appellant asks this Court to reweigh the evidence. This we cannot do. *See Smith*, 861 A.2d at 896. We discern no abuse of discretion by the trial court, finding the verdict for aggravated assault was not against the weight of the evidence. *See Ramtahal*, 33 A.3d at 609.

Lastly, Appellant contends the trial court abused its discretion in sentencing him to seven-and-one-half to fifteen years' imprisonment and restitution. He avers that his sentence is excessive and unreasonable given his lack of a significant prior record, his mental health issues, and the court's failure to inquire into his background. Appellant's Brief at 23.

Appellant challenges the discretionary aspects of his sentence. This Court has stated:

> [D]iscretionary aspects of [a defendant's] sentence are not appealable as of right. Rather, an appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by satisfying a four-part test.
>
> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 903 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).
>
> An appellate court will find a "substantial question" and review the decision of the trial court only where an aggrieved party can articulate clear reasons why the sentence imposed by the trial court compromises the sentencing scheme as a whole.

***Commonwealth v. Leatherby***, 116 A.3d 73, 83 (Pa. Super. 2015) (some citations omitted).

Instantly, Appellant timely filed this appeal, preserved the issue of an excessive sentence in his post-sentence motion, and included a statement in

his brief which conforms with Pa.R.A.P. 2119(f). Accordingly, we ascertain whether Appellant has raised a substantial question. *See id.*

> [W]e hold that Rule 2119(f) requires only that a concise statement of reasons relied upon for allowance of appeal allow us to determine the allegation of trial court error and the immediate context of the allegations as it relates to the prescribed sentencing norms. Thus, **the Rule 2119(f) statement must specify where the sentence falls in relation to the sentencing guidelines are what particular provision of the Code is violated** (*e.g.,* the sentence is outside the guidelines and the court did not offer any reasons either on the record or in writing, or double-counted factors already considered). Similarly, **the Rule 2119(f) statement must specify what fundamental norm the sentence violates and the manner in which it violates the norm** (*e.g.,* the sentence is unreasonable or the result of prejudice because it is 500 percent greater than the extreme end of the aggravated range). If the Rule 2119(f) statement meets these requirements, we can decide whether a substantial question exists. The nature of the crime underlying the sentence and the specific sentence in months or years imposed for that crime are therefore not required in a Rule 2119(f) statement because they are unnecessary to determining the existence of a substantial question.

*Commonwealth v. Goggins*, 748 A.2d 721, 727 (Pa. Super. 2000) (some citations omitted).

In the Rule 2119(f) statement, Appellant cites *Commonwealth v. Kellly*, 33 A.3d 638 (Pa. Super. 2011).[8] In *Kelly*, this Court opined: "A claim that a sentence is manifestly excessive such that it constitutes too

---

[8] We note that the *Kelly* Court found that the defendant had waived the issue because the brief was devoid of any argument on the issue. *Kelly*, 33 A.3d 640.

severe a punishment raises a substantial question. *See Commonwealth v. Mouzon*, [ ] 812 A.2d 617, 624 ([Pa.] 2002)." *Id.* at 640. The *Mouzon* Court opined:

> This does not mean, however, that the Superior Court must accept **bald allegations of excessiveness**. Rather, only where the appellant's Rule 2119(f) statement sufficiently articulates the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process, will such a statement be deemed adequate to raise a substantial question so as to permit a grant of allowance of appeal of the discretionary aspects of the sentence.

*Mouzon*, 812 A.2d at 627 (emphasis added and citation omitted).

In the case *sub judice*, Appellant's bald reference to *Kelly* in his Rule 2119(f) statement does not raise a substantial question. *See id.* Appellant avers that his sentence was excessive because the court failed to consider his lack of a significant prior record and his significant mental health issues. Appellant's Brief at 14. This does not raise a substantial question. *See Goggins*, 748 A.2d at 727. Therefore, we do not address the merits of his challenge to discretionary aspects of his sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/30/2015

- 16 -

| COMMONWEALTH | : IN THE COURT OF COMMON PLEAS |
| | : DAUPHIN COUNTY, PENNSYLVANIA |
| v. | : NO. 105 CR 2014 |
| | : SUPERIOR COURT DOCKET |
| | : NO. 1961 MDA 2014 |
| BRIAN LEEKS | : |

## TRIAL COURT OPINION

Brian Leeks ("Defendant") appeals the judgment of sentence imposed on June 12, 2014. For the reasons set forth, the judgment should be affirmed.

## RELEVANT PROCEDURAL HISTORY

The Defendant was tried before a jury on June 4, 2013 and found guilty of Aggravated Assault and Terroristic Threats with Intent to Terrorize Another. Defendant was found not guilty of Criminal Attempt-Homicide. Defendant represented himself at trial.

On June 12, 2014, the court sentenced Defendant to an aggregate sentence of 7 ½ to 15 years as follows:

Count 2- 78 to 156 months in a state correctional institute, a fine of $25 plus costs of the proceedings;

Count 3- 12 to 24 months in a state correctional institute consecutive to Count 2, a fine of $25 plus costs of the proceedings.

On June 23, 2014, appellate counsel filed a post-sentence motion. The trial court denied the post-sentence motion on October 21, 2014. Defendant filed a Notice of Appeal on November

1

4-11

18, 2014. Pursuant to the court's order, Defendant filed a Concise Statement of Matters Complained of on Appeal on December 10, 2014.

FACTUAL BACKGROUND

The evidence at trial revealed that on the evening of November 11, 2013, Leelawattie Jagdeo and Defendant argued about Defendant's relationship with another woman. (Transcript of Proceedings, Jury Trial, June 5, 2014- June 6, 2014, p. 33)(hereinafter, "N.T. 2"). The argument became physical, at which point Ms. Jagdeo attempted to flee from the downstairs living room of the home to the upstairs bathroom. (*Id.* p. 34). Defendant chased her to the bathroom. Ms. Jagdeo told Defendant she did not want to fight anymore. (*Id.* p. 35). However, Defendant dismantled a towel rack and repeatedly struck Ms. Jagdeo on the head.(*Id.* p. 35). Ms. Jagdeo attempted to shield her head from the multiple blows. At some point during the attack, Defendant hit Ms. Jagdeo with a shower curtain rod, kicked her in the stomach and hit her in the head with his hands. (*Id.* pp. 36-38). He then choked her to the point of unconsciousness. (*Id.* p. 38). When Ms. Jagdeo regained consciousness, she was in a bathtub filled with water, fully clothed. She recalled that that the water was up to her hair. (*Id.* p. 29).

A neighbor, Vickie Thompson, testified that she heard the loud fighting that evening and heard Defendant tell Ms. Jagdeo that he was going to kill her. Ms. Thompson called 911. (*Id.* p. 9). An ambulance took Ms. Jagdeo to the hospital.

Medical evidence revealed that Ms. Jagdeo suffered a small post traumatic scalp contusion at the cerebral convexity. (*Id.* p. 81). She was admitted as an inpatient with diagnoses of intramural hematoma of distal duodenum, proximal jejunum and brain contusion of the cerebral convexity. (*Id.* pp. 82-83).

2

Officer Charles Pensyl responded to the domestic violence call. At the hospital, Officer Pensyl questioned Ms. Jagdeo. She told what happened to her, but refused to tell the officer who did this to her. Officer Pensyl testified that he had never seen a domestic violence victim in such fear for her life. (*Id.* p. 21).

Detective John O'Connor was assigned to this case. Detective O'Connor executed a search warrant of Ms. Jagdeo's home on November 13, 2013. (*Id.* p. 88). Detective O'Connor observed a blood smear on the neighbor, Ms. Thompson's door. (*Id.*) He found the living room of Ms. Jagdeo's home in disarray. (*Id.* p. 90). Detective O'Connor found an apology letter with a heart on it which read, "Sorry for everything. I'll come back. Love always." (*Id.* pp. 95-96).

In an interview with Detective John O'Connor, Defendant stated that Ms. Jagdeo was the aggressor, that he pushed her into a wall and she hit her head and fell into the bathtub.(*Id.* p. 113). Defendant stated that Ms. Jagdeo threatened to kill him and that he became afraid and ran away. (*Id.*)

## DISCUSSION

A. THE COURT AND THE COMMONWEALTH ATTORNEY CONDUCTED A THOROUGH AND COMPLETE COLLOQUY WHICH DEMONSTRATED THAT DEFENDANT KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY CHOSE TO PROCEED *PRO SE.*

The colloquy conducted on the record on June 4, 2013 at pages 5-14 provided a complete and thorough explanation of Defendant's rights, the charges he faced and the risk of proceeding *pro se* which satisfied the requirements of Pennsylvania Rule of Criminal Procedure 121 (a)(2).

Rule 121(a)(2) requires that,

3

To ensure that the defendant's waiver of the right to counsel is knowing, voluntary and intelligent, the judge or issuing authority, at a minimum, shall elicit the following information from the defendant:

(a) that the defendant understands that he or she has the right to be represented by counsel, and the right to have free counsel appointed if the defendant is indigent;

(b) that the defendant understands the nature of the charges against the defendant and the elements of each of those charges;

(c) that the defendant is aware of the permissible range of sentences and/or fines for the offenses charged;

(d) that the defendant understands that if he or she waives the right to counsel, the defendant will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules;

(e) that the defendant understands that there are possible defenses to these charges that counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently; and

(f) that the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, these errors may be permanently lost.

Pa.R.Crim.P. 121(a)(2).

4

A review of the transcript reflects that the court and the Commonwealth's Attorney fully addressed each requisite element of the colloquy. Defendant acknowledged that: he had the right to counsel; he qualified for representation by a public defender; he understood the nature of the charges and possible sentences; if he chose to represent himself, he would be bound by the same rules as an attorney familiar with such rules including rules relating to preservation of rights for purposes of appeal; if he invoked the right to remain silent, he could not present testimony by way of opening or closing statements. (N.T. 2, pp. 6-19).

The court further inquired into Defendant's ability to understand the proceedings. Defendant stated that he had been diagnosed with depression with psychotic features but had been discharged from care. (*Id.* p. 6). Defendant consistently acknowledged that he understood the information provided. Defendant's prior counsel, Attorney Mary Klatt, who served as standby counsel, stated that based upon her extensive dealings with him she had no doubt as to Defendant's complete competency to stand trial. Nevertheless, out of an abundance of caution, prior to trial, Attorney Klatt requested that a mental health advocate meet with Defendant. The advocate believed Defendant to be competent to stand trial. (*Id.* pp. 23-24). Further, the court placed on the record its observations of Defendant and its conclusion that it found Defendant competent to stand trial. (*Id.* p. 24)

Accordingly, Defendant knowingly, intelligently and voluntarily waived the right to counsel.

## A. THE WEIGHT OF EVIDENCE SUPPORTS THE VERDICT.

The court properly denied the Defendant's Motion for a New Trial or Arrest of Judgment which challenged that the verdict was against the weight of the evidence.

5

The Superior Court has explained the "crucial distinction between evidentiary weight and sufficiency" as follows:

> Sufficiency of the evidence and weight of evidence are discreet inquiries. In reviewing the sufficiency of the evidence, we must view the evidence presented and all reasonable inferences taken therefrom in the light most favorable to the Commonwealth, as verdict winner. The test is whether the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt…A motion for a new trial on grounds that the verdict s contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict but contends, nevertheless, that the verdict is against the weight of the evidence. Whether a new trial should be granted on grounds that the verdict is against the weight of the evidence is addressed to the sound discretion of the trial judge, and his discretion will not be reversed on appeal unless there has been an abuse of discretion… The test is not whether the court would have decided the same way but whether the verdict is so contrary to the evidence as to make the award of a new trial imperative so that right may be given another opportunity to prevail.

*Commonwealth v. Whiteman*, 336 Pa. Super 120, 124-25, 485 A.2d 459, 461-62 (1984), citing, *Commonwealth v. Taylor*, 324 Pa. Super, 420, 425, 471 A.2d 1228, 1229-30 (1984); *Commonwealth v. Sample*, 321 Pa. Super.457, 468 A.2d 799 (1983)(allocatur denied); *Commonwealth v. Miller*, 303 Pa. Super. 504, 450 A.2d 40 (1982) and *Commonwealth v. Vogel*, 501 Pa. 314, 461 A.2d 604 (1983) cert. denied, ___ U.S. ____, 104 S.Ct. 1603, 80 L.Ed. 2d 133 (1984).

We note at the outset that neither Defendant's Motion for a New Trial nor Arrest of Judgment nor Statement of Matters Complained of On Appeal identify which of the charges are unsupported by the weight of evidence. Rather, Defendant asserts only the boilerplate claim that "the verdict was against the weight of the evidence so as to shock one's sense of justice where Defendant was never shown to have engaged in acts which constitute the crimes of which he was convicted." (Defendant's Post-Sentence Motion, para. 7).

The facts set forth briefly in this Opinion and at greater length in the Commonwealth's Brief For Appellee, with complete citation to the testimony, demonstrate that ample evidence supports the verdict of guilty at each charge. Findings as to "the weight of the evidence [are] exclusively

6

for the finder of fact who is free to believe all, part, or none of the evidence, and to determine the credibility of the witnesses." *Commonwealth v. Champney*, 574 Pa. 435, 832 A.2d 403, 408 (Pa. 2003).

The evidence easily satisfied the elements of the charge of Aggravated Assault. The statute provides:

A person is guilty of aggravated assault if he:

(1) attempts to causes serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

18 Pa. C.S.§2702.

In reaching the verdict of guilty of Aggravated Assault, the jury considered and accepted the evidence that Defendant brutally beat Ms. Jagdeo with a towel bar causing head injury, punched her in the stomach and strangled her to the point of unconsciousness.

In his Statement of Matters Complained of on Appeal, Defendant raised the claim that Defendant acted in self-defense. The record is devoid of evidence to support Defendant's suggestion that he acted in self defense. Even if the jury considered such claim, it was free to accept the testimony of Detective John O'Connor that he did not observe any bruises or injuries on the Defendant and therefore conclude that Defendant did not act in self-defense.

7

Further, the weight of evidence well supports the verdict of guilty on the charge of Terroristic Threats with Intent to Terrorize Another pursuant to 18 PA.C.S. § 2706 (A)(1) which provides, in relevant part:

Terroristic Threats.

(a) Offense defined.- A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:

(1) commit any crime of violence with intent to terrorize another;

\*\*\*

18 PA.C.S. § 2706 (A)(1).

The jury heard and accepted testimony of the victim's neighbor, Ms. Thompson, that she heard loud fighting noises at the victim Ms. Jagdeo's home next door and a voice she identified as Defendant's state that he was going to kill her. (N.T. 2, pp. 10-12).

Therefore, the weight of the evidence supports the verdict and the trial court properly denied Defendant's Motion for a New Trial or Arrest of Judgment.

B. THE COURT PROPERLY EXERCISED ITS DISCRETION IN SENTENCING DEFENDANT.

Defendant challenges the discretionary aspects of the sentence by his assertion that the sentence was excessive and unreasonable and failed to consider Defendant's lack of prior record and to inquire as to Defendant's mental health concerns. The transcript belies Defendant's arguments.

The court properly imposed a sentence in the aggravated range and stated its reasons therefore on the record. [1] The court sentenced Defendant as follows:

---

[1] The court ordered Defendant removed from the courtroom following Defendant's profanity laced outburst.

8

THE COURT: On count two, the aggravated assault, the Court presided over the proceeding. Also, observed some things in the courtroom and was at least informed of what happened out at the prison with the assaults.

~~This assault was particularly disconcerting, the length of it, hitting her with a metal~~ towel rack, poking her with a shower rod to the extent she had internal bleeding, bleeding ~~on her brain, and other injuries that she had. So we recognize that.~~

I do believe I'm going to [g]o outside the standard range and impose a sentence of not less than 78 months to 156 months, fine of $25 and costs of prosecution.

Condition of his sentence would be that he gets the mental health treatment, anger management, and any other mental health treatment that is recommended by a professional, while he is incarcerated.

He can't keep himself in prison without fighting with others, so I have a serious concern about public safety issues should he be released without any treatment while he is in prison.

On the terroristic threats count, at count three, impose a sentence of not less than one year nor more than two years in the state correctional institute, and that will run consecutively to the previous count; $25 fine and costs of prosecution.

I will give him the time credit from November 14, 2013 until today's date.

We will set up a time to read him his appellate rights. We will do that promptly. Again, we are not going to start the thirty days until he knows his rights. We can do that from the prison.

The restitution amount is $768.30.

(Transcript of Proceedings, June 12, 13, 2014, pp. 5-9).

9

In the exercise of its discretion, the court properly considered "the character of the defendant and the particular circumstances of the offense in light of the legislative guidelines for sentencing and [imposed] a sentence [that was] consistent with the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant." 42 PA.C.S.§ 9781(b). Further,

> 'Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion.' In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish by reference to the record that the sentencing court ignored or misplaced the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Rodda*, 723 A.2d 212, 214(Pa. Super. 1999)(quoting *Commonwealth v. Johnson*, 666 A.2d 690,693(PA. Super. 1995).

As reflected in its observations on the record, the court considered a sentence in the aggravated range proper based upon the particularly brutal and prolonged attack upon Ms. Jagdeo.

Also, contrary to Defendant's argument, the court considered Defendant's mental health concerns in imposing the condition that Defendant undergo mental health treatment. The court deemed such treatment necessary to reduce danger to the community upon Defendant's release.

Accordingly, the court properly denied Defendant's Post-Sentence Motion.

## CONCLUSION

For all of the foregoing reasons, the judgment of sentence should be affirmed.

BY THE COURT:

RICHARD A. LEWIS
PRESIDENT JUDGE
FOR TODD A. HOOVER

June 26, 2015

RECEIVED
OFFICE OF
CLERK OF COURTS
2015 JUN 26 PM 3: 49
DAUPHIN COUNTY
PENNA

Distribution:

Joseph Cardinale, Esq., Dauphin County District Attorney's Office

Ryan Lysaght, Esq., Dauphin County Public Defender's Office

11